IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SHAWN BRITTINGHAM, and CHRISTOPHER STORY, | § § § | No. 464, 2011 |
| Petitioners Below, Appellants, | § § § | Court Below: |
| v. | § § § | Superior Court of the State of Delaware, in and for |
| TOWN OF GEORGETOWN, a municipal corporation, WILLIAM TOPPING, Chief of Police for the Town of Georgetown, and RALPH HOLM, Captain of Police for the Town of Georgetown, | § § § § § § § | Sussex County C. A. No. S10M-09-023-RFS |
| Respondents Below, Appellees. | § § | |

Submitted:  March 11, 2015
Decided:  April 7, 2015

Before **STRINE**, Chief Justice, **HOLLAND** and **VALIHURA**, Justices.

Upon appeal from the Superior Court.   **AFFIRMED**.

Bruce A. Rogers, Esquire (*argued*), Law Offices of Bruce A. Rogers, Georgetown, Delaware, for Appellants.

James E. Liguori, Esquire, and Gregory A. Morris, Esquire, Liguori & Morris, Dover, Delaware; Stephani J. Ballard, Esquire (*argued*), Law Offices of Stephani J. Ballard, LLC, Wilmington, Delaware, for Appellees.

**VALIHURA**, Justice:

In this appeal, we are asked to consider whether the Superior Court abused its discretion by declining to exercise its mandamus jurisdiction to remedy various alleged violations of the Law Enforcement Officers' Bill of Rights ("LEOBOR"). Petitioners-below Shawn Brittingham ("Brittingham") and Christopher Story ("Story") (collectively, the "Appellants") sought mandamus relief for several alleged violations of LEOBOR while they were police officers with the Georgetown Police Department ("GPD"). Respondents-below Town of Georgetown ("Georgetown"), Georgetown Chief of Police William Topping ("Chief Topping"), and Captain Ralph Holm ("Captain Holm") (collectively, the "Appellees") moved for summary judgment. The Superior Court granted the motion, thereby denying Brittingham and Story's petition for a writ of mandamus.[1]

On appeal, Brittingham and Story argue that the process afforded them did not comply with LEOBOR, and that their only remedy is a mandamus writ ordering vacatur of the resulting disciplinary decisions. Appellees respond that they did not violate LEOBOR, that Appellants' claims are now moot, and that the Superior Court did not abuse its discretion in denying the requested relief. We find that Brittingham and Story are correct that a technical violation of LEOBOR occurred, but we reject their claims as to all other alleged violations. However, as to the one meritorious claim, the matter is moot because neither Brittingham nor

---

[1] *See Brittingham v. Town of Georgetown*, 2011 WL 2650691 (Del. Super. Jun. 28, 2011) [hereinafter *Brittingham I*].

Story are presently employed by the GPD, and because the relief they seek is not relief that is available to them in a mandamus proceeding. Accordingly, for the reasons stated herein, we AFFIRM the Court's decision below as to all claims but one, and as to that claim, we hold that the claim is moot.

## *FACTUAL AND PROCEDURAL HISTORY*

During the relevant time periods, Brittingham and Story were police officers employed by Georgetown in the GPD. In 2007, Chief Topping issued an oral order prohibiting GPD officers from meeting or speaking with the mayor or members of the Town Council to discuss internal police business without first obtaining his permission and going through the chain of command. In spite of this order, on December 23, 2009, seven off-duty officers met with Town Council Member Sue Barlow ("Barlow") at her home to discuss police department issues.

The scope of Chief Topping's order and the subjects discussed at the meeting have been the principal focus of a separate civil action and appeal, and were thoroughly examined in a separate opinion of the Superior Court, which we have affirmed in a separate Order.[2]

When Captain Holm learned of the meeting, he informed Brittingham, Story, and the other officers involved that they were being investigated for violating GPD Rules and Regulations. Chief Topping requested that the Dover Police Department

---

[2] *See Brittingham v. Topping*, 2014 WL 4382998 (Del. Super. Jul. 31, 2014), *aff'd*, No. 477, 2014 (Del. Apr. 7, 2015) [hereinafter *Brittingham II*].

send someone to do the internal investigation because so many GPD officers were either under investigation or otherwise involved in the matter.[3] The Dover Police Chief assigned Sergeant Eric Richardson for this purpose. On March 18, 2010, the officers under investigation were provided with a Notification of Professional Standards Inquiry. Sergeant Richardson interviewed each of the officers involved. Transcripts of those interviews were submitted to Captain Holm for review.

After reviewing the transcripts, Captain Holm determined that only one charge—insubordination—was substantiated. A written reprimand was offered to each of the officers, including Brittingham and Story. Although a written reprimand was below the matrix of permissible punishments for insubordination, Chief Topping testified that he and the Town Council offered a sanction below the

---

[3] During discovery for *Brittingham II*, Chief Topping explained his rationale for seeking an investigating officer from outside the department: "[O]nce we decided to have an IA [internal affairs/professional standards investigation], you know, I started adding some things up. Obviously, you've got seven officers involved. And you got Mike and Matt Barlow [Barlow's sons and GPD police officers] whose mom they were talking to, so they're out of the picture. And you got me and you've got the captain, who we can't do that because we have to -- we were the subject of the meeting from what we found out." He stated that he wrote to the Chief of Police of Dover and requested investigative support. Sergeant Richardson was assigned to conduct the investigation.

penalty matrix[4] in an effort to resolve the matter.[5]

Rather than accept the written reprimand, Brittingham and Story elected to request a hearing as to the allegations made against them. Chief Topping contacted the Criminal Justice Council ("CJC") to form the panel. Prior to the hearing, Brittingham and Story filed a motion with the CJC to compel discovery of documents, evidence, and proof. The CJC denied the motion because it lacked authority to compel production and the officers failed to identify any exculpatory documents that had not been produced.

At a hearing before the CJC panel on September 9, 2010, Brittingham and Story acknowledged that they were aware of Chief Topping's order regarding contact with council members. After hearing the evidence presented by both sides, the CJC panel found substantial evidence to support the insubordination charge. The panel noted, "[t]he Board is cognizant that this case may raise First

---

[4] The Georgetown Police Department penalty matrix places limits on the punishment an officer can receive depending on the violation involved. The Chief is allowed to choose a punishment within a range of sanctions allowed for each offense. As described by Chief Topping, "I can reduce a punishment or a sanction to less than what the matrix calls for. I just can't make it more than what the matrix calls for." App. to Appellees' Answering Br. in *Brittingham II* at B126. Certain aggravating circumstances, such as a violation committed with subordinate officers present, allow the Chief to elevate the punishment to a higher class within the matrix. *Id.* Under this matrix system, Brittingham received a higher penalty "[b]ecause he was a supervisor." *Id.*

[5] *See* App. to Appellees' Answering Br. in *Brittingham II* at B126 ("[W]e all really wanted to put this matter to bed and go at it from a different angle as opposed to having to discipline the officers."); *see also id.* at B127 ("The last thing we wanted to do was punish officers en masse after losing a police officer."). This reference is to a September 1, 2009, incident that resulted in the tragic death of Patrolman Chad Spicer. Brittingham was also shot in the line of duty during that incident. As the trial court in *Brittingham II* observed, "[t]his terrible occurrence caused morale at the GPD to plummet to an all-time low." *Brittingham II*, 2014 WL 4382998, at *2.

4

Amendment issues regarding the right of free speech and to petition the government for redress." However, the CJC panel did not address the constitutional question because its jurisdiction under 11 *Del. C.* § 9207 "is limited to making findings of fact."[6] The CJC quoted the United States Court of Appeals for the Ninth Circuit: "Resolving a claim founded solely upon a constitutional right is singularly suited to a judicial forum and clearly inappropriate to an administrative board."[7] The CJC panel was not asked to recommend a penalty.

In October 2010, Chief Topping imposed discipline against Brittingham and Story. Brittingham received a four-week suspension without pay and a fourteen-day reduction in rank to Patrolman First Class, and was placed on disciplinary probation for one year. Story received a two-week suspension without pay, a seven-day reduction in rank to Patrolman, and disciplinary probation for one year. The officers appealed to the Town's Disciplinary Action Appeals Board. At a

---

[6] *See* 11 *Del. C.* § 9207 ("Any decision, order or action taken following the hearing shall be in writing and shall be accompanied by findings of fact. The findings shall consist of a concise statement upon each issue in the case. A copy of the decision or order accompanying findings and conclusions along with the written action and right of appeal, if any, shall be delivered or mailed promptly to the law-enforcement officer or to the officer's attorney or representative of record.").

[7] *Downen v. Warner*, 481 F.2d 642, 643 (9th Cir. 1973); App. to Appellees' Answering Br. at B58.

hearing held on October 18, 2010, the Appeals Board upheld the findings of the CJC panel.[8]

On September 24, 2010, Brittingham and Story filed a petition for a writ of mandamus in the Superior Court (*Brittingham I*).[9] In filing their mandamus petition, Brittingham and Story sought an order for a new hearing, additional production of documents, restoration of their employment *status quo ante*, and to have all records associated with the insubordination charge removed from their employment files. In addition, on January 4, 2011, they filed a civil complaint against Georgetown, Chief Topping, and Captain Holm in the Superior Court (*Brittingham II*).[10] The civil complaint alleged, among other claims, violation of their First Amendment rights.[11]

---

[8] Brittingham and Story argue that "no true 'appeal' occur[ed]" because no evidence was taken and no testimony was given. However, Appellants offered and the Board admitted into evidence several pieces of correspondence. Appellants' counsel also brought before the Board multiple items of concern relating to the timing of the hearing, the recusal of certain Town Council members, the lack of transcripts from the CJC hearing, and the taking of a vote on the disciplinary action by secret ballot.

[9] The petition was filed in the Superior Court before Brittingham and Story had exhausted their appellate remedies. Another complaint arising from these facts was filed in December 2010, but was dismissed when the plaintiffs failed to timely respond to a motion to dismiss. *See Brittingham I*, 2011 WL 2650691, at *2, n.1.

[10] *Shaffer v. Topping*, No. S11-C-01-004, DI 1 (Del. Super. Jan. 4, 2011).

[11] Although several claims were made in the initial complaint, five claims remained after the plaintiff's third amended complaint: (1) Chief Topping's order was unconstitutional; (2) two counts of retaliation for the exercise of First Amendment rights; (3) violation of the Delaware Whistleblowers' Protection Act ("DWPA"); and (4) violation of the implied covenant of good faith and fair dealing. *See Brittingham II*, 2014 WL 4382998 at *4. The Superior Court ruled that Barlow was not a "supervisor" for the purposes of the DWPA and therefore dismissed that count. *See Shaffer v. Topping*, 2012 WL 4148979 (Del. Super. Aug. 24, 2012). In addition,

6

As to the mandamus petition, on June 28, 2011, the Superior Court found that Appellants had not established that their rights had been violated under LEOBOR. Thus, the Court declined to exercise its mandamus jurisdiction and dismissed the petition on Appellees' motion.[12] This appeal followed on August 26, 2011. After being advised that *Brittingham II* was pending before the Superior Court, on March 19, 2012, this Court stayed the *Brittingham I* appeal pending the Superior Court's final decision in *Brittingham II*.[13]

On July 31, 2014, the Superior Court in *Brittingham II* granted Appellees' motion for summary judgment on all remaining counts because Brittingham and Story had failed to establish that their meeting with Barlow constituted protected speech under the First Amendment.[14] Accordingly, on August 1, 2014, this Court lifted the stay in *Brittingham I*.[15] Appellants filed a notice of appeal in *Brittingham II* on August 29, 2014.[16] In the interest of justice and judicial economy, we consolidated the two appeals for the purpose of oral argument, which was held on March 11, 2015. We have addressed *Brittingham II* in a separate Order affirming

---

Shaffer was dismissed as a plaintiff under the doctrine of *res judicata*, leaving Brittingham and Story as the remaining plaintiffs. *See id.*

[12] *Brittingham I*, 2011 WL 2650691, at *4.

[13] *Brittingham I*, No. 464, 2011, DI 22 (Del. Mar. 19, 2012).

[14] *Brittingham II*, 2014 WL 4382998, at *1.

[15] *Brittingham I*, No. 464, 2011, DI 24 (Del. Aug. 1, 2014).

[16] *Brittingham II*, No. 477, 2014, DI 2 (Del. Aug. 29, 2014).

the judgment of the Superior Court. In this Opinion, we address Brittingham and Story's request for mandamus relief.

## DISCUSSION

Mandamus is an exceptional remedy that is not available as a matter of right,[17] but rather, is issued only according to the "sound judicial discretion" of the court in which mandamus is sought.[18] This Court reviews the Superior Court's denial of a petition for a writ of mandamus for an abuse of discretion.[19]

A writ of mandamus may be issued by the Superior Court to command a lower court, agency, or public official to perform a duty "to which the petitioner has established a clear legal right."[20] "A writ of mandamus will not issue, however, unless the petitioner can establish that there is no other adequate remedy available."[21] For the performance of a duty to be clearly owed to a petitioner, it

---

[17] *Guy v. Greenhouse*, 1993 WL 557938, *1 (Del. Dec. 30, 1993).

[18] *Ingersoll v. Rollins Broad. of Del., Inc.*, 272 A.2d 336, 338 (Del. 1970).

[19] *Parker v. State of Del. Dep't. of Corr.*, 2003 WL 133603, *1 (Del. Jan. 6, 2003).

[20] *Clough v. State*, 686 A.2d 158, 159 (Del. 1996) (citing *Milford 2nd St. Players v. Del. Alcoholic Beverage Control Comm'n*, 552 A.2d 855, 856 (Del. Super. 1988)). In the context of employee discipline, "mandamus is the proper remedy to compel reinstatement of officers or employees illegally discharged, removed, or suspended in violation of the civil service law . . . ." *Smith v. Dep't of Pub. Safety of the State of Del.*, 1999 WL 1225250, *12 (Del. Super. Oct. 26, 1999) (citing 55 C.J.S. *Mandamus* § 233 (1998)), *aff'd*, 2000 WL 1780781 (Del. Nov. 30, 2000).

[21] *Clough*, 686 A.2d at 159 (citing *In re Hyson*, 649 A.2d 807, 808 (Del. 1994)). *See State ex rel. Lyons v. McDowell*, 57 A.2d 94, 97 (Del. 1947) ("If the right be doubtful, mandamus will not lie. If the right be clear, and there is some other adequate remedy, that remedy, and not mandamus, must be relied upon.").

8

must be nondiscretionary or ministerial, meaning that it is "prescribed with such precision and certainty that nothing is left to discretion or judgment."[22]

The Superior Court has broad discretion to deny a petition where the legal duty is unclear or the petitioner has another remedy available.[23] The Court may also dismiss a petition for mandamus where issuing the writ would be inequitable[24] or where events after the petition's filing moot the necessity of the writ.[25] Relatedly, a court will not issue a writ of mandamus where doing so would be useless: "It is elementary that the writ of mandamus will not be granted to compel the performance of a futile act."[26]

---

[22] *Guy*, 1993 WL 557938, at *1.

[23] *See* 2 Victor B. Woolley, *Woolley on Delaware Practice*, § 1655 (1906) ("The remedy by writ of mandamus is extraordinary, and if the right is doubtful, or the duty discretionary, or the power to perform the duty wanting, or inadequate, or if there be any other specific and adequate legal remedy, the writ will not in general be allowed.").

[24] *See Ingersoll*, 272 A.2d at 338 (affirming the denial of mandamus that would require destruction of a cable tower that serviced thousands of customers because granting the petition would result in "unfair burden upon the innocent public").

[25] *See Parker*, 2003 WL 133603, at *1 (affirming the denial of a prisoner's petition for a writ of mandamus in which he requested medical treatment at a certain facility because the prisoner gave informed consent to be treated at another facility after his petition was filed). *See also* Woolley, *supra* note 23, at § 1656 ("[T]he interest must amount to a clear legal right existing in the relator at the time of the application, so as to raise a corresponding duty on the part of the respondent that may be enforced." (citing *State ex rel. Oxyhydrogen Co. of Del. v. Simmons*, 50 A. 213 (Del. 1901))).

[26] *State ex rel. Smith v. Carey*, 112 A.2d 26, 29-30 (Del. 1955) (citation omitted). *See* 52 AM. JUR. 2D *Mandamus* § 23 ("Before a writ of mandamus will be issued, its usefulness must be shown. The writ must be effectual, be of a substantial or practical benefit to the plaintiff, and serve a proper purpose. Mandamus will not issue if it will be unavailing, nugatory, or useless, nor will it issue if its performance will not achieve a beneficial result. If events occurring subsequent to the commencement of the proceedings would render the writ nugatory, useless, and unavailing the writ will not issue." (internal citations omitted)).

### *The Law Enforcement Officers' Bill of Rights ("LEOBOR")*

The legal duties relevant to this case are set forth in LEOBOR.[27] LEOBOR was passed in 1985 to provide uniform procedural rights to officers under investigation by their own departments.[28] The Delaware General Assembly was concerned about "inconsistencies between departmental procedures within the State."[29] LEOBOR applies to "all law-enforcement disciplinary proceedings throughout the State, conducted by the law-enforcement agencies specified in § 9200(b) of this title."[30]

Most relevant here is Section 9200(c), which sets forth the rights of officers under investigation for disciplinary purposes. The version of the statute in effect at the time of the events at issue provided that a complaint cannot be filed against an officer to initiate disciplinary action "unless the complaint is supported by substantial evidence derived from *an investigation by an authorized member of the department.*"[31] Notably, this aspect of the statute was amended on July 21, 2014, to allow the appointment of an investigating officer from outside the department.[32]

---

[27] 11 *Del. C.* § 9200 *et seq.* (2009). Section 9200 has been amended twice since the commencement of the investigation at issue here.

[28] *See Alexander v. Town of Cheswold*, 2007 WL 1849089, *3 (Del. Super. Jun. 27, 2007).

[29] *Id.* (quoting Synopsis, S.B. No. 96, 133rd Gen. Assembly (1985); 65 Del. Laws, ch. 12, § 1).

[30] 11 *Del. C.* § 9209.

[31] 11 *Del. C.* § 9200(c)(3) (2009) (emphasis added).

[32] 11 *Del. C.* § 9200(c)(3) (2014) ("No formal complaint against a law-enforcement officer seeking dismissal or suspension or other formal disciplinary action shall be prosecuted under

However, the prior version of the statute was in effect during the relevant times here, and thus, it is the version that we apply.

At the conclusion of an investigation, the officer must be informed in writing of the investigating officer's findings and recommendations.[33]  A copy of the record of the investigation must be provided to the officer or the officer's counsel at the officer's expense upon request.[34]  Once an officer is charged with a violation and discipline is sought, the officer is entitled access to all evidence that is "exculpatory, intended to support any disciplinary action[,] or [is] to be introduced in the departmental hearing on the charges involved."[35]  Brittingham and Story, as officers protected by LEOBOR, had a clear legal right to the process provided therein.

### *The Alleged LEOBOR Violations*

In the proceedings below, Brittingham and Story alleged a number of violations of LEOBOR.  The alleged violations included the following assertions:

---

departmental rule or regulation unless the complaint is supported by substantial evidence derived from an investigation by an authorized member of the department *or* another officer who is certified by the Council on Police Training pursuant to Chapter 84 of this title and has experience and/or training on conducting an internal law-enforcement investigation and is appointed by the Chief of Police of the law-enforcement department to conduct the investigation of the officer in question." (emphasis added)).

[33] 11 *Del. C.* § 9200(c)(11) (2009).

[34] 11 *Del. C.* § 9200(c)(7) (2009).

[35] 11 *Del. C.* § 9200(c)(10) (2009).

- Appellees did not enforce the requirement in the GPD Code of Conduct that all members of the force obey all orders;

- Appellees failed to protect their constitutional right to free speech by prohibiting them from contacting Council members;

- Appellees did not conduct an investigation by an authorized member of the department;

- Appellees failed to produce the Departmental Internal Investigations Contact Log;

- Appellees failed to "delineate the proper insubordination charges;"

- Appellees failed to support the initial complaint by substantial evidence;

- Appellees failed to disclose exculpatory evidence; and

- Sergeant Richardson failed to inform them in writing of his findings and recommendations.[36]

Based upon these alleged violations of LEOBOR, the Appellants petitioned the Superior Court to:

- Remand the matter for a new hearing with a different CJC panel;

- Require Appellees to provide copies of transcripts and records to be used in the case;

- Immediately restore Appellants' employment, benefits, and prior ranks; and

- Remove all relevant documents from personnel files and records.[37]

As a result of our review of the record, we conclude that all but one of the alleged violations are meritless for the reasons stated in the Superior Court's

---

[36] *See Brittingham I*, 2011 WL 2650691, at *3-4.

[37] *See id.* at *2.

decision.[38]  Accordingly, we affirm the decision below as to these challenges and address the remaining issues below.

### *The First Amendment Claim*

Brittingham and Story claimed a violation of their First Amendment right to free speech because they were prohibited from contacting Council members.[39] First, they note that the CJC panel was unable to resolve the question of whether Appellants' First Amendment rights were violated.  The Superior Court dispensed with the First Amendment claim, noting that Appellants did not raise the issue with the CJC and that the CJC did not have the statutory authority to address legal questions.[40]  We agree with the Superior Court that under Section 9207, the CJC is a fact-finding body that has no jurisdiction to decide questions of law.[41] Appellants do not point to any other source of law establishing that police officers have a clear right to have constitutional claims decided by the CJC.

Brittingham and Story also do not demonstrate why their First Amendment claims could not be heard elsewhere, such as in the civil proceeding they later filed in the Superior Court.  Mandamus is inappropriate where petitioners have the

---

[38] *See id.* at *3-4.

[39] *Id.* at *3.

[40] *Id.* ("Plaintiffs did not raise this issue below, nor is it within the panel's statutory role as fact finder.  Plaintiffs have not stated a viable civil rights claim, or initiated such an action." (citing 11 *Del. C.* § 9207)).

[41] *See* 11 *Del. C.* § 9207 (2009).

13

ability to seek recourse elsewhere.[42]  Here, Brittingham and Story's separate civil action argues against their having no other remedy.  Far from being quickly dispensed with, their civil claims were litigated for several years, with both parties engaging in extensive discovery.[43]  Accordingly, the Superior Court properly held that mandamus was not appropriate as to Appellants' First Amendment claim, and in any event, the claim is moot in its mandamus guise because it has been decided on its merits in the civil action.

### *The Only Possibly Meritorious LEOBOR Claim is Moot*

Appellants' claim that the investigation was performed in violation of Section 9200(c)(3) of LEOBOR is technically correct.  The investigating officer, who worked for the Dover Police Department, was not an "authorized member of the department" as required by the version of the statute in effect at that time.[44]  Yet, the Superior Court found that the decision to look outside the GPD for investigative support was not a violation of Brittingham and Story's rights, but rather provided them with additional protection.[45]  We agree that, given the small size of the GPD and the number of officers being investigated, it is difficult to see

---

[42] *See Clough*, 686 A.2d at 159.

[43] The Superior Court in *Brittingham II* addressed Brittingham and Story's First Amendment claims at length.  *See Brittingham II*, 2014 WL 4382998, at *4-18.

[44] *See* 11 *Del. C.* § 9200(c)(3) (2009).

[45] *Brittingham I*, 2011 WL 2650691, at *3 ("Having an investigator outside [the] GPD was an added protection for Plaintiffs because the dispute lay squarely between the seven officers and their Chief.  There is no violation of Plaintiffs' rights.").

14

how Appellants were prejudiced by having an independent officer perform the investigation.

Appellants' own actions indicate a lack of prejudice arising from this technical violation. For example, in their petition for mandamus, Appellants did not ask for an investigation conducted by an authorized member of the GPD in compliance with LEOBOR, but rather focused on simply obtaining a new hearing. The hearing requested by Brittingham and Story in lieu of accepting the written reprimand was composed of officers outside the GPD. Section 9205 of LEOBOR, which sets forth hearing procedures, states that hearings "shall be conducted within the department by an impartial board of officers. . . . In the event an impartial board cannot be convened, then a board of 3 officers or more shall be convened under the auspices of the Delaware Criminal Justice Council."[46] The Superior Court found that Brittingham and Story requested a hearing panel from outside the GPD.[47] Further, at oral argument before this Court, counsel for Appellants acknowledged that the hearing could not have been conducted by officers within the GPD because Chief Topping and Captain Holm were essentially the complaining parties. They also acknowledged that there likely was no unconflicted officer within the department who could have performed the initial

---

[46] 11 *Del. C.* § 9205(b) (2009).

[47] *Brittingham I*, 2011 WL 2650691, at *1.

15

investigation.[48]  Brittingham's and Story's request to have a hearing panel composed of officers outside the GPD undercuts their claim that they were prejudiced by having the investigation conducted by an officer outside the GPD.

Although Delaware courts have held that in some circumstances, mandamus relief may be an appropriate remedy for LEOBOR violations,[49] this Court has also

---

[48] *See* Videotape:  Oral Argument Before the Delaware Supreme Court, at 3:17 *(Brittingham v. Georgetown*,      No.      464,      2011,      March      11,      2015),      *available      at* http://new.livestream.com/DelawareSupremeCourt/events/3873892.  The relevant exchange at oral argument proceeded as follows:

| | |
|---|---|
| Court: | But were there actually people who were unconflicted who—within the department—that could have done this [investigation]? |
| Counsel: | Part—what we had determined subsequently is probably not. |
| Court: | And in fact you asked for a hearing under [Section] 9205, right? |
| Counsel: | Yes. |
| Court: | Which—the hearing panel you wanted to be from outside the department. |
| Counsel: | The statute provided for the hearing panel to be, if it could not be within the department, the hearing panel was selected by the Criminal Justice—or three persons selected under the auspices of the Criminal Justice Council and that was what was done in this case. |
| Court: | Right.  Presumably because you didn't think it could've been conducted within the department, right? |
| Counsel: | That was statutory.  That was the statute at the time, which indicated that if it involved—and in this instance since the officers involved were the Chief and the Captain, it would be impossible for them to sit as the adjudicatory body since they were presumptively the complaining parties which had set forth the complaint about the officers.  So, the statute did indeed provide for the ability to move forward and use the CJC—the Criminal Justice Council—having them pick the three officers, which they did in this instance, and I believe it was a Captain, a Lieutenant, and a Sergeant, all from . . .. |

[49] *See, e.g.*, *Rosario v. Town of Cheswold*, 2007 WL 914899 (Del. Super. Mar. 2, 2007) (granting an officer's petition for a writ of mandamus where the police department failed to schedule a hearing within 30 days as required by LEOBOR, and the writ was the officer's only adequate remedy for the failure to fulfill a nondiscretionary duty, *i.e.*, scheduling the hearing), *aff'd sub nom. Town of Cheswold v. Rosario*, 2008 WL 853541 (Del. Apr. 1, 2008) (affirming that Rosario

affirmed the trial court's denial of mandamus relief when any violations were technical in nature and there was no prejudice to the officers involved, as in this case.[50] But we do not need to consider the contours of mandamus review and its application to the Appellants' LEOBOR claims because the record reveals that the Appellants' claims are now moot.

Any relief this Court could order pursuant to a writ of mandamus would be useless to Appellants and, in fact, is no longer being sought. At oral argument, Brittingham and Story advised the Court that they have both left the GPD and that Chief Topping is retiring. Based on this change in circumstances, they conceded that ordering a new investigation or restoration of rank would be inappropriate: "Given that neither of the officers remain in the Town of Georgetown's employ, it would be difficult to send this down for yet another hearing, so what we're simply asking to do is to vacate that which was found in *Brittingham I*."

We agree that reinstating their positions with the GPD or an attempt to repeat the investigation into the charges against them using an authorized officer would be pointless. Neither Brittingham nor Story remain employed by the GPD

---

had not waived the right to a hearing, but not reaching the issue of the trial court's remedy, which was not appealed by the Town).

[50] *See, e.g.*, *Smith v. Department of Public Safety of the State of Del.*, 1999 WL 1225250 (Del. Super. Oct. 26, 1999) (declining to grant a petition for a writ of mandamus filed by a police officer who claimed several violations of his rights under LEOBOR, in part because the officer's allegations amounted to mere technical violations that were not "sufficiently egregious or compelling"), *aff'd*, 2000 WL 1780781 (Del. Nov. 30, 2000).

17

or Georgetown, and therefore, they cannot benefit from any mandamus relief this Court could provide. Accordingly, we find their request for mandamus relief to be moot.

Recognizing that their change in employment compromised their argument for mandamus, the Appellants requested other relief at argument in lieu of a new investigation, namely, vacating the disciplinary sanctions. Thus, we confront the question of whether these other remedies—vacating the findings of the CJC and removing any associated disciplinary records—are within the scope of mandamus. Because we have not previously addressed this question, we turn to other jurisdictions for guidance.

The majority of states have held that "mandamus is not the proper remedy to compel the undoing of acts already done or the correction of errors or wrongs already perpetrated . . . ."[51] Mandamus is also not appropriate to compel disclosure of law enforcement records, and—particularly relevant here—generally will not be used to compel correction of law enforcement records.[52] Even in the context of criminal records, an Ohio court has held that a writ of mandamus will not issue to compel removal of an individual who was allegedly incorrectly included in a

---

[51] 55 C.J.S. *Mandamus* § 62.

[52] *See* 55 C.J.S. *Mandamus* § 294.

police department's list of known sex offenders.[53] The Court reasoned that "it is not clear that [the petitioner] has a clear, legal right enforceable in mandamus to have the records corrected or that [the department] has a clear, legal duty enforceable in mandamus to correct its records."[54] On appeal, the Supreme Court of Ohio held that the petitioner had failed to establish that police department records identified him as a sex offender prior to his conviction of sexual offenses. The Court affirmed the dismissal of the mandamus petition, noting that only a violation of the petitioner's procedural due process rights could require modification of the police department's files.[55]

In *Henderson v. Mayor of Medford*[56]—a case that the Superior Court in *Smith* relied upon—the Massachusetts Supreme Court addressed an officer's petition for a writ of mandamus based on his department's failure to provide him with a timely hearing on the disciplinary charges against him.[57] The officer did not dispute the grounds for the charges, but sought mandamus relief purely on the

---

[53] *Dussell v. Lakewood Police Dep't*, 2002 WL 31722978, *3 (Ohio Ct. App. Dec. 5, 2002), *aff'd sub nom. Ohio ex rel. Dussell v. Lakewood Police Dep't*, 791 N.E.2d 456 (Ohio 2003).

[54] *Id.*

[55] *Dussell*, 791 N.E.2d at 458 ("Dussell is not being deprived of life, liberty, or property as a result of the alleged erroneous classification. Dussell has not shown that prison officials relied upon any erroneous sex-offender classification from Lakewood, or elsewhere, to his detriment. Thus, he cannot invoke the Due Process Clause in order to have Lakewood's files modified.").

[56] 75 N.E.2d 642 (Mass. 1947).

[57] *Id.* at 643.

alleged technical violation of the statute.[58]  The Court found the matter moot because the officer was not terminated but rather suspended, and the term of his suspension had lapsed.  He was not entitled to mandamus relief reinstating his position because he "was entitled to return to work."[59]  The Court assumed that the officer had chosen not to return, but noted that if he had attempted to do so and was "wrongfully prevented from returning[,] he has a new cause of action for that wrong wholly distinct from the cause of action upon which the present petition was brought."[60]  As to the officer's request to remove the record of the discipline from his employment file, the Court noted that "[a] petition for a writ of mandamus does not lead to the quashing of any record."[61]  After finding the officer's petition moot, the Court affirmed a modified order below dismissing the petition.[62]  We find *Henderson* persuasive and conclude that the removal of discipline from Appellants' employment records is outside the scope of the relief available to these Appellants under mandamus.

In the case of Brittingham and Story, there is nothing in LEOBOR that sets forth a clear legal duty on the part of any of the defendants to remove disciplinary

---

[58] *Id.* at 644.

[59] *Id.*

[60] *Id.*

[61] *Id.*  Notably, the Court also found that the officer did not suffer any prejudice as a result of the records being maintained because he conceded the substance of the charges and the "objections to the procedure [were] wholly technical." *Id.*

[62] *Id.*

records from an officer's employment files—and Appellants have not pointed us to any.[63] In addition, the technical and nonprejudicial nature of the LEOBOR violation at issue here did not rise to the level of a Due Process violation. Accordingly, the relief Appellants request is not within the scope of mandamus.[64]

Because Brittingham and Story did not suffer any denial of their rights under LEOBOR as to claims other than the Section 9200(c)(3) issue concerning the appointment of an investigating officer outside the GPD, we affirm the Superior Court's order granting summary judgment. As to the alleged violation of the statute regarding the appointment of an outside officer to conduct the investigation, we find the matter moot.

## *CONCLUSION*

Based upon the foregoing, the judgment of the Superior Court is hereby AFFIRMED.

---

[63] *See* 11 *Del. C.* § 9200 *et seq.*

[64] Appellants' Amended Opening Brief criticizes the Superior Court for not addressing "the plethora of cited deficiencies." In particular, the Appellants state that they "cited no fewer than sixteen violations of the LEOBOR statute in their application for writ or [*sic*] mandamus," and that the trial court "failed to address all but seven of these allegations in its order granting summary judgment." Yet Appellants fail to address with any specificity any of the allegedly ignored "plethora of deficiencies" in their briefing before this Court. Moreover, the Superior Court's order is more fairly read as having considered, but rejected, all of Appellants' claims. *See Brittingham I*, 2011 WL 2650691, at *4 ("While Plaintiffs are guaranteed a range of protections under LEOBOR, they have not shown that Defendants violated those protections by failing to perform a ministerial duty. Nor have they shown any procedural or substantive due process violations. The Court finds no violation of Plaintiffs rights under LEOBOR or other reason to interject itself in the routine disciplinary proceedings of the GPD." (footnote omitted)).