# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

BRANDYWOOD CIVIC
ASSOCIATION, DOUG DEVOLL,
MCDANIEL CIVIC ASSOCIATION,
INC. and RICHARD J. MILES, JR.

      Plaintiffs,

      v.

THE HONORABLE JENNIFER
COHAN, SECRETARY OF THE
DELAWARE DEPARTMENT OF
TRANSPORTATION, and THE
DELAWARE DEPARTMENT OF
TRANSPORTATION

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No.: N19M-06-185 EMD

Submitted: January 13, 2019
Decided: April 14, 2020

*Upon Defendants' Motion to Dismiss*
***GRANTED.***

Ronald G. Poliquin, Esquire, The Poliquin Firm, LLC, Dover, Delaware, *Attorneys for Plaintiffs Brandywood Civic Association, Doug DeVoll, McDaniel Civic Association, Inc. and Richard J. Miles, Jr.*

Ann C. Cordo, Esquire, Deputy Attorney General, State of Delaware, Department of Justice, Wilmington, Delaware, *Attorneys for Defendants Delaware Department of Transportation, Jennifer Cohen, Secretary of DelDOT.*

**DAVIS, J.**

## I. INTRODUCTION

This is a declaratory judgment action. Through this action, Plaintiffs Brandywood Civic Association, Doug DeVoll, McDaniel Civic Association, Inc., and Richard J. Miles, Jr. (collectively, "Plaintiffs") seek a declaration that the State of Delaware's allocation of funds for

road maintenance projects through the Community Transportation Fund ("CTF") is: (i) a violation of Delaware's "Separation of Powers Doctrine;" and (ii) a violation of certain state laws.[1] The Plaintiffs also petition the Court to issue a writ of mandamus commanding Defendants Delaware Department of Transportation ("DelDOT") and Jennifer Cohen, Secretary of DelDOT (collectively, "DelDOT") to care for and maintain the State's roads.[2]

Discussed more fully below, the CTF is a fund that the General Assembly allocates monies into on an annual basis. The CTF allows the members of the General Assembly to direct that certain monies be utilized for specific road maintenance and other projects in that exist in a specific legislator's district.

Plaintiffs filed their Complaint for Declaratory Relief and for a Writ of Mandamus (the "Complaint") on June 15, 2019.[3] The Complaint consists of three claims for relief—Counts I through Count III. Count I seeks a declaration that the CTF violates the separation of powers doctrine under the State's Constitution and is therefore unconstitutional.[4] Count II is also a claim for declaratory relief and asks for a declaration that the CTF violates 17 *Del. C.* § 131 and/or 29 *Del. C.* § 8419.[5] Finally, Count III is a petition under 10 *Del. C.* § 564 for issuance of a writ of mandamus that commands DelDOT to meet its statutory obligation to "absolutely care for, maintain and control the publically dedicated community roads and streets" of Delaware without reliance of the CTF. [6]

On October 25, 2019, DelDOT filed Defendants' Motion to Dismiss (the "Motion").[7] The Motion seeks to dismiss the Complaint, under Civil Rule 12(b)(6), for failing to state a claim

---

[1] Compl. at ¶ 1.
[2] *Id.*
[3] D.I. No. 1.
[4] Compl. at ¶¶ 26-33.
[5] *Id.* at ¶¶ 34-38.
[6] *Id.* at ¶¶ 39-46.
[7] D.I. No. 11.

upon which relief can be granted. Plaintiffs opposed the Motion, filing their Response to Motion to Dismiss (the "Response") on December 2, 2019.[8] On December 9, 2019, DelDOT then filed a Reply in Further Support of Defendants' Motion to Dismiss (the "Reply").[9] The Court held a hearing on the Motion, the Response and the Reply on January 13, 2020.[10] After the hearing, the Court took the Motion under advisement.

For the following reasons, the Motion is **GRANTED**.

## II. RELEVANT FACTS[11]

Plaintiffs comprise a group of individuals and entities. Brandywood Civic Association is a Delaware non-profit corporation whose members are homeowners in Brandywood in New Castle County.[12] According to the Complaint, DelDOT is responsible to maintain the streets in Brandywood.[13] Mr. DeVoll is a resident of Brandywood, a member of Brandywood Civic Association and a Delaware taxpayer.[14] McDaniel Civic Association is a Delaware non-profit corporation whose member are homeowners in the McDaniel Crest, McDaniel Heights and Concord Manor communities in New Castle.[15] Mr. Miles is resident of Concord Manor, a member of McDaniel Civic Association and a Delaware taxpayer.[16]

DelDOT is, according to the Complaint, a department of the "Executive Office of the State of Delaware."[17] Secretary Cohen is state official in charge of DelDOT.[18]

---

[8] D.I. No. 15.

[9] D.I. No. 16.

[10] D.I. No. 18.

[11] Unless otherwise indicated, the following are the facts as alleged in the Complaint. For purposes of the Motion, the Court must view all well-pleaded facts alleged in the Complaint as true and in a light most favorable to the Plaintiffs. *See, e.g., Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Acad., LLC*, 2010 WL 5825343, at \*3 (Del. Super. Oct. 27, 2010).

[12] Compl. at ¶ 9.

[13] *Id*.

[14] *Id*. at ¶ 10.

[15] *Id*. at ¶ 11.

[16] *Id*. at ¶ 12.

[17] *Id*. at ¶ 14.

[18] *Id*. at ¶ 13.

DelDOT is statutorily directed to manage, care for, and control all public roads, causeways, highways and bridges throughout the State under 17 *Del.* C. § 131 ("Section 131").[19]

Section 131, in pertinent part, provides:

> (a) All the public roads, causeways, highways and bridges in this State which have been or may hereafter be constructed, acquired or accepted by the Department of Transportation shall be under the absolute care, management and control of the Department.
>
> (b) All roads and streets situate in unincorporated suburban communities throughout the State which were built or created between July 1, 1935, and July 1, 1951, whether paved or unpaved, shall henceforth be under the absolute care, management and control of the Department and shall be maintained, repaired and reconstructed by the said Department.
>
> (c) The Department shall immediately commence the necessary preliminary work in order to bring these roads up to proper standards as soon as possible with due consideration for the immediate needs of certain areas.
>
> (d) The general jurisdiction conferred upon the Department by this section shall be exercised by it by the establishment and supervision of any and all policies which may be necessary or appropriate to implement such jurisdiction.[20]

Title 29, sections 8419(2)(a)-(b) also provides planning requirements that DelDOT must adhere to when establishing a formula-based process for setting priority on all transportation projects.[21] It reads as follows:

> The Department of Transportation, with Council approval, shall:
>
> (2) a. Establish a formula-based process which shall be used for setting priorities on all Department transportation projects and which shall consider, but not be limited to the following: Safety, service and condition factors; social, economic and environmental factors; long range transportation plans and comprehensive land use plans; and continuity of improvement.
>
> b. The formula based process shall not be utilized for setting priorities for dirt roads, suburban street aid projects, municipal street aid projects or system preservation projects. System preservation projects will be prioritized based upon performance measures

---

[19] 17 *Del. C.* § 131. Hereafter, textual references to section in Title 17 of the Delaware Code will be "Section ___." *See also* Compl. at ¶ 15.

[20] 17 *Del. C.* § 131(a)-(d).

[21] 29 *Del. C.* § 8419(2)(a)-(b)

established in the Department for pavement management, bridge management and safety management projects.[22]

Although not referenced in the Complaint, the Motion or the Response, DelDOT's authority over the public roadways in Delaware is not unlimited. For example, Section 134(a) provides:

> The Department shall have no power, authority or jurisdiction of the streets of any incorporated city or town, except as otherwise provided in this section, unless such power, authority and jurisdiction shall be voluntarily given and surrendered by such city or town to the Department and then only upon such terms as the Department shall prescribe.[23]

The CTF was created to fund transportation related projects and provide legislators some discretion in choosing transportation improvements within their respective districts. DelDOT describes the CTF as follows:

> The CTF was established in the mid-'80s by the state's Bond Bill Committee to speed the process of making relatively small local improvements and also to put decision-making about priorities into the hands of each community through their representatives.
>
> CTF funding provides a fixed amount of funds annually to each State Senator and House Representative to be used as they and their constituents believe is best for transportation improvements within their district. Legislators may also fund their own project ideas and they have the option of banking a portion of their yearly CTF budget for up to three years in order to fund a larger transportation improvement. Funding expires after three years if it is not allocated to projects or estimates that are actively moving forward.[24]

The Delaware Administrative Code also addresses the CTF. The Code notes that "CTF funds are funds allocated to the State's legislators and used for transportation projects normally

---

[22] 29 Del. C. § 8419(2)(b).

[23] 17 *Del. C.* § 134(a).

[24] *F.Y.I. CTF Brochure Publication*, Delaware Department of Transportation, https://deldot.gov/Publications/brochures/pdfs/ctf_brochure.pdf.

within their particular districts. These funds are most often applied to repairs or improvement of subdivision streets."[25]

The Code details the relationship between DelDOT and the CTF in 2 Del. Admin. Code 2404-2D, which provides:

> Following initial construction, it is important that traffic calming installations, like any other street improvement, receive proper maintenance in order to function safely, as designed and aesthetically pleasing. Since almost all traffic calming installations are on local residential or subdivisions streets, paying for the maintenance, repair and replacement of the facilities over time is a shared responsibility between the DelDOT District Maintenance Funds and the Community Transportation Fund (CTF). DelDOT is responsible for all short term emergency maintenance repairs including items such as potholes and localized areas of breakup of the roadway pavement, curbs around islands or curb extensions, normal sidewalk pavement within traffic islands, roadway striping, and DE MUTCD compliant signing.
>
> Long term major rehabilitation and replacement funding, as well as funding for special added aesthetic features, such as decorative paving blocks, is provided through the Community Transportation Fund under the Department's Capital Program. CTF funds cannot be used for short term maintenance. More specifically, the maintenance and replacement responsibility for each type of traffic calming installation is assigned as follows:
>
> 1. Roadway Pavement
>
>    • DelDOT is responsible for all emergency repair of roadway pavement damaged by weather events, accidents, or through premature pavement failure. Emergency repairs consist of patching or repaving with conventional maintenance paving materials (hot-mix or concrete). If the initial traffic calming installation included patterned pavement or decorative paving blocks, additional funding to replace the decorative paving blocks may be provided from other sources, such as the CTF or private community funds.
>
>    • Community Transportation Fund (CTF) is used for projects necessitated by continuous wear over time and involving complete rehabilitation or replacement of the pavement of a traffic calming installation, including replacement of decorative pavement blocks, patterned concrete pavement or full width hot mix resurfacing. Generally, this type of repair is accomplished when the entire street is repaved using CTF funds.

---

[25] 2 *Del. Admin. C.* 2404-2C.1 ("Funding Sources").

• Community Associations may supplement public funding, when needed, to provide decorative pavement blocks for use in the repair or replacement of the traffic calming installation.

2. Curbing

• DelDOT is responsible for emergency repairs to any island curbing or curb extensions to insure curbs function as originally intended and that appropriate drainage is maintained. Repairs will use conventional maintenance curbing materials (concrete or hot-mix). If the initial traffic calming installation utilized aesthetic curbing materials, such as granite or stone blocks, additional funding to replace the granite or stone blocks may be provided from other sources, such as the CTF or private community funds.

• Community Transportation Fund (CTF) is used for projects involving complete replacement of the curbing utilized in a traffic calming installation, including rehabilitation or replacement of aesthetic curbing materials, such as granite or stone blocks.

• Community Associations may supplement public funding, when needed, to provide aesthetic curbing materials, such as granite or stone blocks.

3. Island Maintenance – Structural

• DelDOT will provide emergency maintenance on any standard, surfaced traffic island or curb extension. When performing any emergency surface repair on a traffic island or curb extension, DelDOT will use conventional concrete sidewalk pavement.

• Community Transportation Fund (CTF) is used for projects involving complete rehabilitation or replacement of traffic islands or curb extensions. Island surfaces may be paved with concrete sidewalk, patterned concrete pavement, or decorative paving blocks approved by DelDOT.

• Community Associations may supplement public funding, when needed, to provide aesthetic treatment to the surface of traffic islands and curb extensions.

4. Signing and Striping

• DelDOT will provide all necessary restriping of crosswalks, edge lines, center stripes, and warning markings under its normal restriping maintenance cycle. DelDOT will also respond to requests to replace DE MUTCD required signing, should it be damaged or removed.

• Community Transportation Fund (CTF) can be used to provide funding for any special community signing approved by DelDOT, but not required by the DE MUTCD.

• Community Associations may provide funding for supplemental signing, approved by DelDOT, but not required by the DE MUTCD.[26]

DelDOT utilizes a Project Prioritization Process (the "PPP") to carry out DelDOT's statutory obligation to manage and control the public roads of Delaware.[27] According to the Complaint, DelDOT has stated that its responsibilities under the PPP include the maintenance of the roadways, bridges and public transportation systems.[28] DelDOT employs a computer program called Decision Lens Software ("DLS") to "fairly and equitably" prioritize proposed road projects.[29] Plaintiffs contend that DLS provides a ranking system for projects that is transparent, structured and data driven.[30]

DelDOT allegedly uses "provisions of 29 Del. C. § 8419 (the PPP), DelDOT's Mission Statement, Vision, and Goals, Delaware's Long Range Transportation Plan—20-year forecast and Provisions and National Performance Measure from the latest Federal Authorization Bill – Map-21" to determine final project funding.[31] In addition, prior to the use of DLS, DelDOT applies certain criteria to vet potential projects.[32] The Complaint contends that the criteria applied requires that each potential project shall be:

> (i)consistent with the Long Range Statewide Transportation Plan; (ii) included in an approved Metropolitan Organization ("MPO") Transportation Improvement Program ("TIP") with the MPO areas and (iii) in conformance with the applicable State air quality implementation plan if the project is carried out in an area designated as nonattainment for ozone or carbon monoxide.[33]

---

[26] 2 *Del. Admin. C.* 2404-2D ("Project Maintenance").
[27] Compl. at ¶ 16.
[28] *Id*.
[29] *Id*. at ¶ 17.
[30] *Id*.
[31] Id. at ¶ 19.
[32] Id. at ¶ 20.
[33] Id.

Plaintiffs allege that the CTF is a scheme enacted by the General Assembly to "wrest" control of DelDOT's statutory obligations.[34] The Complaint alleges that CTF projects are not subject to the DLS or the PPP process.[35] Under the CTF, General Assembly members are authorized to spend money appropriated for their use for the repair of local roads and streets without being subject to the priority planning process.[36] Moreover, DelDOT has no role under the CTF in deciding which roads or streets are repaired, maintained or paved.[37]

### III. PARTIES' CONTENTIONS

#### A. THE MOTION AND THE REPLY

DelDOT seeks to dismiss the entire action based on the argument that the Complaint fails to state claims upon which relief can be granted.[38] DelDOT argues that: (i) the CTF does not violate the Separation of Powers doctrine;[39] (ii) DelDOT has not failed to execute existing laws;[40] and (iii) Plaintiffs are not entitled to extraordinary relief through the issuance of a writ of mandamus.[41]

As to Plaintiffs' claim that the CTF constitutes a violation of the Separation of Powers doctrine, DelDOT contends that the CTF, as established, is valid under the three-part test set forth by the Delaware Supreme Court.[42] Next, DelDOT argue that Plaintiffs' claim that DelDOT has failed to execute existing laws is so broad that "Plaintiffs would have to prove that DelDOT

---

[34] *Id.* at ¶ 21.
[35] *Id.* at ¶ 22.
[36] *Id.* at ¶ 23.
[37] *Id.* at ¶ 24.
[38] Mot. ¶ 3.
[39] *Id.* at ¶¶ 11-17.
[40] *Id.* at ¶¶ 18-22.
[41] *Id.* at ¶¶ 23-26.
[42] *Id.* at ¶¶ 14, 16-17.

is not doing any suburban maintenance in the State of Delaware."[43]  With regards to Plaintiffs'

request for issuance of a writ of mandamus, DelDOT claims that Plaintiffs' "Complaint fails to

meet the strict standards for obtaining mandamus."[44]

**B.    THE RESPONSE**

In essence, Plaintiffs are arguing that a strict application of Civil Rule 12(b)(6) warrants

denial of the Motion, contending that the Complaint sufficiently alleges facts that support the

claims for relief.  Plaintiffs argue that this Court should not dismiss the Separation of Powers

doctrine claim at this early stage in the proceedings.[45]  Plaintiffs claim that the Complaint

properly identifies the statutory provisions under which DelDOT is not complying and the

violation of the doctrine.[46]   Plaintiffs also contend that the claim seeking issuance of a writ of

mandamus is properly pled in the Complaint.[47]  Finally, Plaintiffs argue that the Motion relies on

disputed facts which cannot be determined by this Court under Civil Rule 12(b)(6).[48]

**IV. STANDARD OF REVIEW**

**A.    CIVIL RULE 12(B)(6)**

Upon a motion to dismiss, the Court (i) accepts all well-pleaded factual allegations as

true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of

the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only

dismisses a case where the plaintiff would not be entitled to recover under any reasonably

---

[43] *Id.* at ¶ 21.
[44] *Id.* at ¶ 23.
[45] Resp. at ¶¶ 31-54.
[46] *Id.* at ¶¶ 28-30
[47] *Id.* at ¶¶ 17-30.
[48] However, Plaintiffs' fail to specify which facts are in dispute in their briefing.

conceivable set of circumstances.[49]  However, the court must "ignore conclusory allegations that

lack specific supporting factual allegations."[50]

**B.     WRIT OF MANDAMUS PETITION**

Delaware courts have consistently applied the Civil Rule 12(b)(6) legal standard when

considering motions to dismiss writ of mandamus petitions.[51]  "In deciding a motion to dismiss

with respect to a petition for a writ of mandamus, this Court must consider the standards a party

must meet in obtaining a writ."[52]

A writ of mandamus is an extraordinary remedy issued by this Court to compel a lower

court, agency, or public official to perform a nondiscretionary or ministerial duty.[53]  The

issuance of a writ is discretionary and not a matter of right.[54]  Before a writ is issued, "the

[p]etitioner must demonstrate that: he [or she] has a clear legal right to the performance of the

duty; no other adequate remedy is available; and the [lower body] has arbitrarily failed or refused

to perform that duty."[55]  A nondiscretionary or ministerial duty must be "prescribed with such

precision and certainty that nothing is left to discretion or judgment."[56]  The petitioner is not

entitled to a writ of mandamus if the duty is discretionary, the right is doubtful, the power to

perform the duty is inadequate or wanting, or if any other adequate remedy exists.[57]

---

[49] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy,* 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).
[50] *Ramunno v. Crawley,* 705 A.2d 1029, 1034 (Del. 1998).
[51] *See Shah v. Coupe*, 2014 WL 5712617, *1 (Del. Super. Nov. 3, 2014); *Pinkston v. DE Dept. of Corr.*, 2013 WL 6439360, *1 (Del. Super. Dec. 4, 2013).
[52] *Caldwell v. Justice of the Peace Court No. 13*, 2015 WL 9594709, at *3 (Del. Super. Dec. 30, 2015).
[53] *Brittingham v. Town of Georgetown*, 113 A.3d 519, 524 (Del. 2015).
[54] *Shah*, 2014 WL 5712617, at *1.
[55] Nicholson v. Taylor, 882 A.2d 762 (TABLE), 2005 WL 2475736, *2 (Del. 2005); see also Brittingham, 113 A.3d 519 (Del. 2015).
[56] *Id.*
[57] *Pinkston*, 2013 WL 6439360, at *1.

11

## V. DISCUSSION

**A.    THE CTF DOES NOT VIOLATE THE SEPARATION OF POWERS DOCTRINE**

The Court finds the Delaware Supreme Court's decision in *Opinion of the Justices*[58] to be controlling here.  In *Opinion of the Justices*, the Delaware Supreme Court set out a three-part test to determine if the Separation of Powers Doctrine had been violated.  The three-part test is as follows:

> First is the essential nature of the power being exercised. Is the power exclusively executive or legislative or is it a blend of the two? A second factor is the degree of control by the legislative department in the exercise of the power. Is there a coercive influence or a mere cooperative venture? A third consideration of importance is the nature of the objective sought to be attained by the legislature. Is the intent of the legislature to cooperate with the executive by furnishing some special expertise of one or more of its members or is the objective of the legislature obviously one of establishing its superiority over the executive department in an area essentially executive in nature?[59]

So, under the test, the Court must first decide if the power exercised through the CTF is "exclusively executive, legislative, or a blend of the two."[60]  Second, the Court must determine whether the CTF is "a coercive influence or a mere cooperative venture."[61]  Third, the Court must determine if the objective of the General Assembly is (i) to cooperate with the executive by furnishing some special expertise of one or more of its members, or (ii) to establish its superiority over the executive department in an area essentially executive in nature.[62]

---

[58] *Opinion of the Justices*, 380 A.2d 109 (Del. 1977) (holding that total transfer of executive functions, including personnel and records, of Department of Administrative Services to an agency of the General Assembly violated the Separation of Powers Doctrine).

[59] *Id.* at 290.  The Supreme Court adopted a test set out by the Kansas Supreme Court in *State ex rel. Schneider v. Bennett*, 547 P.2d 786, 792 (Kan. 1976) (invalidating state legislature dominated council that tried to usurp governing functions of department of administration which was formerly an exclusive function of the executive).

[60] *Id.*

[61] *Id.*

[62] *Id*.

### 1. *The Power Exercised By The CTF Is A Blend Of Executive and Legislative Powers.*

The Court finds that the CTF is a blend of executive and legislative powers.  As DelDOT contends, "when the General Assembly directs that CTF funds be expended on a particular project, it leaves to DelDOT to actually carry out the project.  That is, DelDOT *executes* the project pursuant to legislative direction."[63]

*Sierra Club v. Delaware Department of Natural Resources and Environmental Control* supports DelDOT's argument.[64]  In *Sierra Club*, the Department of Natural Resources and Environmental Control ("DNREC") issued a permit to carry out a project.[65]  The Sierra Club appealed to the Environmental Appeals Board ("EAB"), objecting to the project on the basis of environmental effects and DNREC's failure to perform a proper cost/benefit analysis of the project.[66]  The EAB issued an order that rejected the Sierra Club's arguments and made clear that the result of DNREC's cost/benefit analysis had no bearing on the environmental effects of the project.[67]  The EAB determined that the decision to move forward on the project remained with the Legislature.[68]

Roughly one month before the EAB Order was issued, the General Assembly passed a bill that provided that the benefits of the project exceeded the costs and directed that the Secretary of DNREC initiate all necessary actions to carry out the project.[69]  The Sierra Club then filed an injunction action with the Chancery Court.[70]  The Sierra Club argued, in part, that the bill violated the separation of powers test in *Opinion of the Justices*.[71] The Chancery Court

---

[63] Mot. at ¶ 15 (emphasis in original).
[64] *Sierra Club v. Del. Dep't of Nat. Res. & Envtl. Ctrl.*, 2006 WL 1716913 (Del. Ch. June 19, 2006).
[65] *Id.* at *1.
[66] *Id.*
[67] *Id.*
[68] *Id.*
[69] *Id.*
[70] *Id.*, at *2.
[71] *Id.*, at *3.

13

found that "determining the costs and benefits of a particular […] project is inherently a blend of executive and legislative powers, as the project's costs are inevitably paid by legislative appropriations."[72]

The CTF, which directs the funding provided by the General Assembly to DelDOT, is inherently a blend of legislative and executive powers. The General Assembly determines the project and its costs. DelDOT does the work. As such, the CTF is an appropriate blend of legislative and executive powers, and not one where power is exclusively executive or legislative.

### 2. The CTF Is A Mere Cooperative Venture.

The Court also finds that the CTF is a mere cooperative venture, rather than a coercive influence. The CTF operates to fund and advance long-term projects in districts across Delaware. Members of the General Assembly direct where they want the money spent in their respective districts, and then cooperates with DelDOT by funding DelDOT's efforts to implement the projects.[73] DelDOT is required to use other funding allocated to it by the General Assembly for short-term projects.[74] There appears nothing coercive in the scheme set up under the CTF.

### 3. The Intent Of The Legislature Is To Cooperate With The Executive

This Court notes that the intent of the General Assembly is to cooperate with DelDOT by furnishing some special expertise, or rather special knowledge, of one or more of its members and not to establish superiority over DelDOT. As DelDOT asserts, "[t]he CTF[,] in effect[,]

---

[72] *Id.*

[73] 2 *Del. Admin. C.* 2404-2D ("Long term major rehabilitation and replacement funding, as well as funding for special added aesthetic features, such as decorative paving blocks, is provided through the Community Transportation Fund under the Department's Capital Program. CTF funds cannot be used for short term maintenance.").

[74] *Id.* ("DelDOT is responsible for all short term emergency maintenance repairs…").

consists of the General Assembly alerting DelDOT to projects in need[] of the [Department's] attention of which it might not otherwise be aware."[75]  This Court tends to agree.  It makes some sense that General Assembly members would have a more particularized knowledge of the issues in their districts and can use this knowledge to work with DelDOT to resolve the issues.

**B.** **PLAINTIFFS FAIL TO SHOW THAT THE CTF MUST MEET THE OBLIGATIONS OF DELDOT UNDER SECTION 131 OR 29 DEL. C. § 8419(2)(B).**

Plaintiffs assert that "[t]his action seeks […] (ii) a declaration […] that the CTF does not meet the obligations of the Delaware Department of Transportation ("DelDOT") to manage, care for and control all roads throughout the State […]."[76]  However, Plaintiffs fail to show that the CTF, a fund established by the General Assembly, is required to meet the statutory obligations of DelDOT under Section 131 or 29 *Del. C.* § 8419(2)(b).  The Court notes that Plaintiffs, in their briefing, are unable to provide any case, statute, policy, or letter from any authoritative source to support their theory.  Moreover, Plaintiffs fail to provide a specific instance or example where DelDOT violated those statutes.  Instead, Plaintiffs seem to be arguing that the CTF's very existence constitutes a *per se* violation of the laws relating to DelDOT.

Plaintiffs read Section 131 too broadly.  DelDOT does not have absolute power over roadway construction, maintenance and alike.  As referenced above, Section 134(a) limits DelDOT's over the streets of any incorporated city or town.  As such, it is possible that directed funding, like the CTF, is possible without violating Section 131.  Moreover, as pointed out in the Motion, the CTF is not alone in providing a method of designated funding outside of Section 131—*see, e.g.*, the Pilot Program[77] and the Portal.[78]

---

[75] Mot. at ¶ 17.
[76] Compl. at ¶ 1.
[77] Bond Bill § 96 (c); H.B. 475, 81 Del. Laws 303 § 92(c) (2018).
[78] *See* https://deldot.gov/Traffic/ReportRoadConditions/index.shtml.

15

The CTF also does not inhibit DelDOT under 29 *Del. C.* § 8419(2)(b) ("Section 8419(2)(b)"). Section 8419(2)(b) prevents DelDOT from including subdivision streets in the priority planning program. Nothing in the CTF generally causes DelDOT to violate this statute. The members of the General Assembly are allocated portions of the CTF and, using their particularized knowledge of their districts, designate projects for DelDOT to address. Instead of addressing this, Plaintiffs generally contend that DelDOT allows the CTF to "circumvent their own carefully constructed priority process."[79] Plaintiffs, however, fail to provide any specific instance where DelDOT violated Section 8419(2)(b) when utilizing the CTF.

## C.   PLAINTIFFS' WRIT OF MANDAMUS IS INSUFFICIENTLY PLED.

Plaintiffs cite to numerous cases outside of this jurisdiction in support of their contention that this Court should not dismiss Plaintiffs' claim for writ of mandamus.[80] Additionally, Plaintiffs rely on a Pennsylvania case where residents were allowed to proceed with a *writ to compel* in order to support their contention that this Court should not dismiss Plaintiffs' writ of mandamus claim.[81] The Court need not discuss the merits of these cases as they are not binding on this Court, and the Court can decide this matter on other grounds.

Plaintiffs' request for a writ of mandamus is deficient and too broad. "[W]hen directed to an administrative agency or public official, mandamus will issue only to require performance of a clear or ministerial duty."[82] "For a duty to be ministerial and thus enforceable by mandamus,

---

[79] Compl. at ¶ 37.
[80] Resp. at ¶¶ 19-23.
[81] *Id.* at ¶ 22. (emphasis added) (It is unclear, as Plaintiffs have not explained, whether a *writ to compel* in Pennsylvania is identical or even similar to a *writ of mandamus* in this State.).
[82] *Guy v. Greenhouse*, 637 A.2d 827 (Del. 1993) (table); 1993 WL 557938, at *1; *see also Capital Education Association v. Camper*, 320 A.2d 782 (Del. Ch. 1974).

16

the duty must be prescribed with such precision and certainty that nothing is left to discretion or judgment."[83]

Here, Plaintiffs request that this Court issue a writ of mandamus and command DelDOT to meet its obligation under Section 131.[84] Plaintiffs' request fails, with regards to the strict standard required by a writ of mandamus, because Plaintiffs cannot specify in particular what DelDOT has failed to do and what this Court should command DelDOT to do precisely. Instead, Plaintiffs generalize their contention and suggest that "Defendants are not complying with their statutory obligations[.]"[85] Without precisely stating what specific act or job that DelDOT has refrained from doing or have failed to carry out, this Court cannot grant a writ of mandamus in this matter.

Plaintiffs are just too general with this petition of a writ of mandamus. The nondiscretionary or ministerial duty must be "prescribed with such precision and certainty that nothing is left to discretion or judgment."[86] Section 131 does not prescribe with precision and certainty such that nothing is left to discretion or judgment. Instead, Section 131 is more a general grant of certain authority in DelDOT and requires DelDOT to exercise discretion as to which roads should be maintained and in what priority. For these reasons, the Court finds that the Complaint fails to state a claim upon which the Court could issue a writ of mandamus.

---

[83] *Greenhouse*, 1993 WL 557938, at *1; *see also Darby v. New Castle Gunning Bedford Educational Association,* 336 A.2d 209 (Del. 1975).
[84] Compl. at ¶¶ 40-41.
[85] Resp. at ¶ 25.
[86] *Greenhouse*, 1993 WL 557938, at *1; *see also Darby v. New Castle Gunning Bedford Educational Association,* 336 A.2d 209 (Del. 1975).

17

## VI. CONCLUSION

For the reasons stated above, the Motion is **GRANTED**.

**IT IS SO ORDERED**.

Dated: April 14, 2020
Wilmington, Delaware

/s/ Eric M. Davis
Eric M. Davis, Judge

cc: File&ServeXpress