**S.B. WOO, Respondent
Below, Appellant,**

v.

**D. Battle ROBINSON, Petitioner
Below, Appellee.**

Supreme Court of Delaware.

Submitted: Nov. 9, 1984.

Decided: Nov. 9, 1984.

Vivian Ann Houghton, Boudart & Houghton, John E. Babiarz, Jr. (argued), Morris, Nichols, Arsht & Tunnell, Wilmington, for appellant.

Joseph S. Yucht, Balick & Yucht, Wilmington, for appellee.

*Opinion On Appellant's Motion To Stay an Election Recount*

MOORE, Justice:

According to various unofficial November 6, 1984, general election returns, the appellant, Dr. S.B. Woo has been elected Lt. Governor of this State, perhaps by as few as 229 votes over his opponent, Mrs. D. Battle Robinson. There were approximately 250,000 votes cast in the election. The Superior Court, sitting as a Board of Canvass pursuant to Article V, § 6 of the Delaware Constitution [1] and 15 Del.C. § 5701,[2] directed that:

1. All voting machines used in election districts in New Castle County be opened and examined;

2. All absentee ballots cast in election districts in New Castle County be opened and examined;

---

1. Del. Const., art. V, § 6, provides:

The presiding election officer of each hundred or election district, on the day next after the general election, shall deliver one of the certificates of the election, made and certified as required by law, together with the ballot box or ballot boxes, containing the ballots, and other papers required by law to be placed therein, to the Prothonotary of the Superior Court of the county, who shall at twelve o'clock noon on the second day after the election present the same to the said Court, and the election officer or officers having charge of any other certificate or certificates of the election shall at the same time present the same to the said Court, and the said Court shall at the same time convene for the performance of the duties hereby imposed upon it; and thereupon the said Court, with the aid of such of its officers and such sworn assistants as it shall appoint, shall publicly ascertain the state of the election throughout the county, by calculating the aggregate amount of all the votes for each office that shall be given in all the hundreds and election districts of the county for every person voted for for such office.

In case the certificates of election of any hundred or election district shall not be produced, or in case the certificates produced do not agree, or in case of complaint under oath of fraud or mistake in any such certificate, or in case fraud or mistake is apparent on the face of any such certificate, the Court shall have power to issue summary process against the election officers or any other persons to bring them forthwith into Court with the election papers in their possession or control, and to open the ballot boxes and take therefrom any paper contained therein, and to make a recount of the ballots contained therein, and to correct any fraud or mistake in any certificate or paper relating to such election.

The said Court shall have all the other jurisdiction and powers now vested by law in the boards of canvass, and such other powers as shall be provided by law.

After the state of the election shall have been ascertained as aforesaid, the said Court shall make certificates thereof, under the seal of said Court in the form required by law, and transmit, deliver and lodge the same as required by this Constitution or by law, and deliver the ballot boxes to the sheriff of the county, to be by him kept and delivered as required by law.

No act or determination of the Court in the discharge of the duties imposed upon it by this section shall be conclusive in the trial of any contested election.

For the purposes of this section the Superior Court shall consist in New Castle County of the President Judge and resident Associate Judge; in Kent County of the Chancellor and the resident Associate Judge; and in Sussex County of the resident Associate Judge and an Associate Judge designated by the President Judge.

Two shall constitute a quorum. The Governor shall have power to commission a Judge for the purpose of constituting a quorum when by reason of legal exception to the Chancellor or any Judge, or for any other cause, a quorum could not otherwise be had. Del. Const., art. V, § 6.

2. 15 *Del. C.* § 5701 requires that:

(a) The Superior Court shall convene in each county on the second day after the general election, at 12:00 noon, for the performance of the duties imposed upon it by § 6 of article V of the Constitution of this State and by this chapter. Thereupon the Court, with the aid of such of its officers and such sworn assistants as it shall appoint, shall publicly

3. All write-in paper rolls used in election districts in New Castle County be examined; and

4. A determination be made of the total number of votes cast for each candidate for the office of Lt. Governor of the State of Delaware.

The issue before me is whether to grant Dr. Woo's motion to stay that order. Dr. Woo contends that its entry is contrary to law.

Under 15 *Del.C.* § 5702(b) the Superior Court *shall* open and examine voting machines and/or absentee ballot boxes and make a recount of the votes contained therein upon a complaint filed under oath of fraud or mistake in the certificates of

ascertain the state of the election throughout the county and in the respective hundreds and election districts by calculating the aggregate amount of all the votes for each office that shall have been given in all the hundreds and election districts of the county for every person voted for for such office. For this purpose, the court shall utilize certificates of election for each election district provided by the Prothonotary, the minority judge of each election district and the department of elections for its county, whose representatives shall sit as observers and assistants to the Court during said calculation of the vote.

(b) For the purposes of this chapter, the Superior Court shall consist in New Castle County of the President Judge and the Resident Associate Judge; in Kent County of the Chancellor and the Resident Associate Judge; and in Sussex County of the Resident Associate Judge and the remaining Associate Judge. For the purpose of this chapter, the Superior Court in each county, as so constituted, shall be a board of canvass for the respective counties of this State.
15 *Del. C.* § 5701.

3. Pursuant to 15 *Del. C.* § 5702, the duties of the Superior Court, as a Board of Canvass, include the following:

(a) Whenever the certificate of election for any election district is not produced when the Court convenes or whenever any absentee ballot box, voting machine or write-in paper roll is not available at that time, the Court may issue summary process against the election officers of such election district or any other persons to bring such documents or objects forthwith into the Court or to make them available for inspection by the Court.

election, or if fraud, mistake or omission is apparent on the face of such certificates.[3]

There are no issues of fraud here. We are dealing solely with questions of mistake in the preparation of the certificates themselves. Necessarily, claims of this type must be made under the dual pressures that official results of elections be promptly known and that such results be free of taint. Under the circumstances, claims of mistake, such as are made here, face the almost insurmountable hurdle, mandated by Superior Court Civil Rule 109, that they be detailed with sworn particularity within two hours after literally hundreds of sealed certificates of election are delivered to the Superior Court in response to the mandate of Article V, § 6 of the Delaware Constitution.[4] Dr. Woo contends

(b) Whenever the certificates produced do not agree or there is a complaint under oath of fraud or mistake in any such certificate, or if fraud, mistake or omission is apparent on the face of such certificate, the Court shall:

(1) Open and examine the necessary voting machines and/or absentee ballot boxes, and, if applicable, examine the necessary write-in paper rolls;

(2) Make a recount of the votes contained therein;

(3) Correct any fraud, mistake or omission in any certificate or paper relating to the election.

(c) The court shall also receive from the department of election for its county a report of the number of absentee ballots delivered to each election district, from which it shall determine and make certain that all these ballots are recorded on the certificates of election for each election district receiving absentee ballots, either in the total number of ballots counted or in the number of ballots rejected.
15 *Del C.* § 5702.

4. Superior Court Civil Rule 109 specifies the procedure for challenging a vote count:

A complaint asking that the Board of Canvass exercise its powers under 15 *Del. C.* § 5702 shall be in a writing under oath filed not later than 2:00 p.m. on the day on which the Board convenes, unless prior thereto the Board shall extend said time, and shall state the following:

1) The name of the candidate on whose behalf the complaint is filed.

2) The office sought by such candidate.

3) The election district or districts involved.

that a recount may be ordered only when fraud or mistake appear on the face of the certificates. However, I do not believe that comports either with 15 *Del.C.* § 5702(b), or the realities of the situation.

■ Thus, it seems to me that a fair and reasonable interpretation of 15 *Del.C.* § 5702(b) is that mistakes in the election certificates may be shown not only by reference to the documents themselves, but by recourse to credible extrinsic evidence.

Here, the Superior Court received a sworn complaint, an accompanying affida-

vit, and held an evidentiary hearing, all indicating that in this close contest for Lt. Governor, there were potentially material discrepancies which could affect the results of the election. Part of the undisputed evidence before the Superior Court was examples of material discrepancies in the unofficial election night tallies of the Department of Elections (the Department) and the State Election Commissioner (the Commissioner), allegedly derived from the certificates of election before they were sealed for delivery to the Superior Court.[5]

4) The specific facts upon which the complaint is based, including:

(a) The fraud or mistake stated with particularity.

(b) The number of votes affected by such fraud or mistake.

(c) Whether or not the number of votes affected by such fraud or mistake affects the result of the election. If fraud or mistake in other election districts is likewise relied upon to affect the result of the election, the names of such districts shall be stated.

5) Whether the facts are averred upon the deponent's personal knowledge or upon information and belief; and if the facts are averred on information and belief, the name, address and official connection, if any, with the election of all persons known to the one signing the affidavit to have personal knowledge of the specific facts constituting the averred fraud or mistake.

A complaint may be withdrawn only with the permission of the Board.

Superior Court Civil Rule 109.

**5.** The basic tabulation of votes and preparation of the certificates on election night are prescribed by 15 *Del. C.* §§ 4975 and 4978. Those statutes provide:

§ 4975. Tabulation of votes shown on voting machine.

(a) As soon as the last voter has left the voting machine booth, the inspector shall see to it that the machine is locked against further voting by leaving the officers' control lever on the side of the machine in the inactive or "in" position. The inspector shall sign the certificate stating that the machine is locked against voting, the number of voters shown on the public counter, the number on the seal and the number on the protective counter. The other election officers shall witness the filling out of this information.

(b) With the assistance of the inspector and utilizing the voting machine keys held by them, the judges shall then open the counting compartments on the front of the machine in the

presence of all persons who may lawfully be in the voting room at that time.

(c) The inspector shall then read in distinct tones the votes recorded on the counters for each office and each candidate. He shall read first each office, starting at the top of the ballot, and shall read across left to right the number of votes cast for each candidate for that office. He shall also read aloud the votes cast on each question on the ballot, in like manner. The judge of the opposite political party from the inspector shall stand by him at the front of the machine to verify the counts being called off.

(d) While the inspector is reading the votes cast, these votes shall be recorded on the individual certificates of election by 2 clerks and the judge of the same political party as the inspector. The count from each voting machine shall be recorded separately on each certificate.

(e) If not already counted, the absentee ballots shall then be tabulated as provided in § 4971 of this title.

§ 4978. Certificates of election; tally lists.

(a) When the reading and counting of the votes is completed, the inspector, judges and clerks shall forthwith make and sign 3 certificates of the election in their election district, according to the form prescribed in § 4508 of this title, stating every office for which votes shall have been given at the election, the name of every person to whom any vote shall have been given for such office and the number of votes given to such person for the office.

(b) Each copy of such certificate shall be put in separate envelopes, which shall be furnished by the departments of election, and the envelopes shall be endorsed on the face thereof with the words "Certificate of the votes cast in ...., Election District of ...., Representative District at the general election in .... County, A.D. ....," and on the back of each envelope, after the same shall have been sealed, the inspector and judges shall respectively write their name crosswise the sealing.

(c) The tally lists shall be signed by the inspector, judges and clerks. They shall be enclosed and sealed in the envelopes containing the

Some of the undisputed discrepancies, including some rather dramatic ones, between the vote reported to the Department and the Commissioner are:

| Election District Reporting | Results Reported To: | | | |
| | Department | | Commissioner | |
| | Woo | Robinson | Woo | Robinson |
|---|---|---|---|---|
| 8th Election District – 1st Rep. District | 414 | 140 | 407 | 137 |
| 9th Election District – 1st Rep. District | 344 | 365 | 330 | 347 |
| 7th Election District – 2d Rep. District | 48 | 14 | 49 | 14 |
| 3d Election District – 3d Rep. District | 756 | 118 | 756 | 117 |
| 5th Election District – 3d Rep. District | 136 | 14 | 38 | 14 |
| 5th Election District – 4th Rep. District | 62 | 16 | 63 | 16 |
| 6th Election District – 5th Rep. District | 480 | 125 | 473 | 121 |
| 10th Election District – 5th Rep. District | 217 | 102 | 2 | 3 |
| 7th Election District – 7th Rep. District | 255 | 286 | 249 | 276 |

■ Because this matter has been treated with expedition at Dr. Woo's request, the parties have not been able to compile the complete record made yesterday in the Superior Court, but I believe it is adequate for present purposes. Moreover, I must be mindful of the standard of review applicable here. A stay is an extraordinary remedy. Its issuance must turn on a clear and convincing demonstration that there was an abuse of discretion below, or that the challenged action was not supported by substantial evidence or was contrary to law.

■ On this record I must conclude that the appellant, Dr. Woo, has not carried that burden. The Superior Court had before it undisputed evidence of material discrepancies between information apparently reported to the Department of Elections and the State Election Commissioner based upon the certificates of election. It also had evidence that absentee ballots were not

handled properly. Moreover, it had the precedent of similar relief having been granted in the 1968 disputed Lt. Governor's election, a House of Representatives contest in 1982, and a New Castle County Prothonotary race in 1982. Thus, I cannot say that it either abused its discretion or that the evidence was insufficient to warrant the recount ordered. The Superior Court concluded that the unofficial tally indicated a difference of only 229 votes between the candidates. The evidence presented clearly showed that there were material discrepancies which could affect the results of the election. Under the mandatory terms of Article V, § 6 of the Delaware Constitution and 15 *Del.C.* § 5702(b), the Superior Court had no recourse but to order this recount.

Turning to the issue of jurisdiction which I have raised sua sponte, the case of *State ex rel. Walker v. Harrington*, Del.Supr., 27 A.2d 67, 75 (1942), indicates that the Supreme Court has no jurisdiction to review acts of the Board of Canvass. Instead, it is suggested that the remedy is by writ of mandamus to the Board. Without attempting to resolve the technical nature of the relief available to the appellant at this late hour of the evening, and upon this emergency application, I will treat this matter as if Dr. Woo has asked this Court to issue, what I characterize as a writ of mandamus to certify the election results without a ballot recount, or in the alternative, to prevent such ballot recount.

■ This Court may not issue a writ of mandamus to *prevent* a public official from taking action; rather a writ of mandamus is appropriate only to *compel* that authority to take certain action required by law. Hence, in this case, I may not issue such a writ to prevent a ballot recount once ordered.

certificates of election to be delivered the night of election day to the Prothonotary and the department of elections. The other certificate shall be placed by itself in an envelope and turned over to the judge of the opposite political party from the inspector, who shall file this

certificate with the department of elections anytime prior to 12:00 noon the second day following the election, at which time the department shall present said certificate to the Superior Court serving as the board of canvass.
15 *Del. C.* §§ 4975 and 4978.

■ Nor may I issue a writ of mandamus where an official is required to act with discretion. In my brief opportunity to study this matter I can find no discretionary act of the Board of Canvass before me. 15 *Del.C.* § 5702 makes mandatory a ballot recount once the Board has determined that material mistakes, sufficient to affect the election results, have been made, or are reasonably likely to exist, in the certificates of election. Accordingly, such a writ of mandamus would only be appropriate if I concluded that the Board's finding of potential mistakes in the certificates was not supported by substantial evidence.[6] Because I find from the undisputed record before me that the Board's determination was supported by substantial evidence, 15 *Del.C.* § 5702 required the Board to do what it is doing now, and that is, to comply with the provisions of 15 *Del.C.* § 5702(b) by ordering a recount.

While it is vital that election contests be promptly settled, it is equally imperative that this process, which goes to the heart of our democratic system, be free of the stain of doubt—that mistakes, however innocent, not subvert the solemn expression of the electorate's will. That is the entire purpose of our constitutional and statutory mandates.

Upon this record I am satisfied that the Superior Court's action was faithful to these precepts, and the application to stay the recount in New Castle County will be DENIED.

■

---

**6.** It thus becomes unnecessary for me also to decide the very troublesome question whether one member of this Court has the authority under Supreme Court Rule 3, even in an emergency, to grant a writ of mandamus.