# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MICHAEL JOIE and )
RYAN JONES, )
                     )
            Plaintiffs, )
                     )
        v. )     C.A. No.:    K25C-05-017 NEP
                     )
THE DELAWARE STATE POLICE, )
                     )
            Defendant. )

Submitted:  July 18, 2025
Decided:  August 25, 2025

## <u>MEMORANDUM OPINION AND ORDER</u>

### *Upon Defendant's Motion To Dismiss*

### GRANTED

Mark A. Denney, Jr., Esq., Brockstedt Mandalas Federico LLC, Wilmington, Delaware, *Attorney for the Plaintiffs*.

Joseph C. Handlon, Deputy Attorney General, Department of Justice, Wilmington, Delaware, *Attorney for the Defendant*.

**Primos, J.**

# INTRODUCTION

Plaintiffs Michael Joie and Ryan Jones ("Plaintiffs"), officers of the Delaware State Police ("DSP"), seek a writ of mandamus to prohibit DSP from terminating them, citing alleged violations of their statutory rights. Plaintiffs also seek a declaratory judgment vindicating those rights. The Court concludes that Plaintiffs' petition for a writ of mandamus seeks an equitable remedy outside the authority of this Court and that, in light of that conclusion, Plaintiffs' request for a declaratory judgment, even if justiciable, would not serve judicial economy. Accordingly, DSP's motion to dismiss is **GRANTED.**

## I.   BACKGROUND[1]

### A. Factual background

Given the procedural posture, the following facts, drawn from Plaintiffs' Complaint and representations at oral argument, are stated in the light most favorable to them.[2]

On December 29, 2024, Plaintiffs' police vehicles were accidentally damaged as Plaintiffs pursued a fleeing suspect on foot.[3] Neither Plaintiff noticed the damage at the time, but Jones became aware of it after reviewing his vehicle-mounted camera's footage that evening.[4] Jones reported the accident to his shift supervisor the following day.[5] Jones' supervisor, however, believed that Jones was aware of the damage immediately after the accident, and his suspicion prompted an internal

---

[1] Citations in the form of "D.I. ___" refer to docket items.

[2] On a motion to dismiss, "all well-pleaded factual allegations are accepted as true," "even vague allegations are well-pleaded if they give the opposing party notice of the claim," and "the Court must draw all reasonable inferences in favor of the non-moving party." *Roundpoint Mortg. Servicing Corp. v. Hubert-Toussaint*, 2019 WL 4740959, at *2 (Del. Super. Sept. 26, 2019) (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[3] Compl. 4 (D.I. 1).

[4] *Id.*

[5] *Id.*

affairs investigation of both Plaintiffs.[6]

On March 12, 2025, DSP's Office of Professional Responsibility ("OPR") held a case review, which signified the conclusion of the internal affairs investigation.[7] On March 13, 2025, OPR informed Plaintiffs' counsel that due to the nature of the allegations involved, a hearing would be held before a Divisional Trial Board (the "Board").[8] OPR's suggested dates for the hearing were more than 45 days thereafter, and April 30, 2025, was chosen as the hearing date.[9] OPR, however, did not seek a written waiver of Plaintiffs' timely hearing rights under 11 *Del. C.* § 9204.[10] Plaintiffs did not object to DSP's hearing date until April 28, when they moved to dismiss their charges and cancel the hearing because it had not been scheduled within the 45 days required by statute.[11]

Upon receiving Plaintiffs' motion to dismiss on April 28, OPR arranged for the members of the Board to hold the hearing at 5:00 p.m. that day.[12] Initially, at around 3:30 p.m., OPR offered to hold the hearing in Dover.[13] Plaintiffs' Wilmington-based counsel was not available given the short notice.[14] Shortly after 4:00 p.m., OPR offered to hold the hearing closer to Wilmington either at 5:00 p.m. or at a later time.[15] Plaintiffs' counsel indicated that he would still be unavailable.[16]

On April 29, 2025, less than 24 hours before the hearing was scheduled to

---

[6] *Id.* at 4–5.
[7] *Id.* at 5.
[8] *Id.*
[9] *Id.* at 6–8.
[10] *Id.* 11 *Del. C.* § 9204 provides, in relevant part, that "[i]n the event an officer is entitled to a hearing, a hearing shall be scheduled within a reasonable period of time from the alleged incident, but in no event more than 45 days following the conclusion of the internal investigation, unless waived in writing by the charged officer."
[11] Compl. 6 (D.I. 1).
[12] *Id.* at 7.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*

begin at its originally-offered time, OPR responded in opposition to Plaintiffs' motion to dismiss.[17] In this response, OPR "for the first time[] revealed" that it had substantiated findings of dishonesty against both Plaintiffs.[18] According to Plaintiffs, "[t]his had the effect of harming [their] position—and their state of mind before the . . . Board[.]"[19]

Following the hearing, the Board recommended that Plaintiffs be terminated. Plaintiffs were then suspended. The parties agree that whether the Board's recommendation will be accepted and whether Plaintiffs will be terminated is currently in the hands of DSP's Colonel.

### B. Procedural history

Plaintiffs filed their Complaint with this Court on May 15, 2025, alleging that DSP had violated their statutory rights in three ways: (1) by failing to have the investigating officer inform Plaintiffs of his findings, conclusions, and any recommendations for further action at the conclusion of his investigation, as required by 11 *Del. C.* § 9200(c)(11); (2) by scheduling the Board hearing more than 45 days after the internal investigation concluded without the written waiver required by 11 *Del. C.* § 9204; and (3) by having OPR arrange and then cancel the proposed April 28 hearing in direct coordination with the Board—which, they argue, contravenes 11 *Del. C.* § 9205(b)'s requirement that the Board members be "impartial."[20]

Plaintiffs' Complaint seeks a writ of mandamus directing DSP to cease the disciplinary proceedings and void the findings against them, "thereby restoring them to full and active duty," and a declaratory judgment that DSP has violated 11 Del. C. §§ 9200(c)(11), 9204, and 9205(b).[21]

---

[17] *Id*. at 8.
[18] *Id.*
[19] *Id.*
[20] Compl. 5–7.
[21] *Id.* at 12.

4

Alongside the Complaint, Plaintiffs filed what they styled a "motion for stay" requesting that this Court stay the then-pending disciplinary proceedings and preclude the Board from issuing a written decision "finding them dishonest and recommending their termination, while the legality of their disciplinary proceedings [was] pending before the Court."[22] The Court deferred ruling on Plaintiffs' motion to allow DSP to respond.[23]

On May 23, 2025, DSP filed a motion to dismiss.[24] In the motion, DSP argued, *inter alia*, that Plaintiffs' procedural claims alleged mere technical violations of the statute, that Plaintiffs had not claimed any prejudice that would entitle them to relief, and that, as evidenced by various documents attached to DSP's motion, Plaintiffs had implicitly waived their statutory speedy-hearing rights.[25] On the same day, DSP filed a response and objection to Plaintiffs' motion for stay, arguing that Plaintiffs' motion sought injunctive relief that this Court lacked authority to grant, and that, even if the Court had such authority, an injunction would not be appropriate.[26]

Plaintiffs responded to DSP's motion to dismiss on June 10, 2025.[27] On June 13, 2025, DSP requested oral argument and indicated that the request was unopposed.[28] The Court heard oral argument on Plaintiffs' motion for stay and DSP's motion to dismiss on July 18, 2025.

At oral argument, Plaintiffs' counsel stated that the Board had already issued its written report and recommendation and conceded that Plaintiffs' motion for stay

---

[22] Pls.' Mot. for Stay Pending Briefing on Declaratory J. and a Writ of Mandamus 3 (D.I. 1).
[23] D.I. 2.
[24] D.I. 4.
[25] Def.'s Mot. to Dismiss Pls.' Compl. for Declaratory Relief and Pet. for Writ of Mandamus (D.I. 4).
[26] Def.'s Obj. to Pls.' Mot. to Stay (D.I. 5).
[27] D.I. 9.
[28] D.I. 10.

was moot. The Court therefore denied Plaintiffs' motion without reaching its merits.[29]

Also at oral argument, counsel for DSP clarified that his client was seeking dismissal pursuant to Superior Court Civil Rule 12(b)(6). Because DSP's motion referred to matters outside the Complaint, the Court raised the possibility that the motion might be converted to one for summary judgment.[30] Neither counsel requested that this occur. Oral argument then proceeded without further substantive reference to the matters outside the Complaint. At a July 31, 2025, office conference, the Court informed counsel that it would not convert DSP's motion.[31] Thus, in reaching its decision, the Court has excluded the materials outside the pleadings referenced in DSP's motion.

## II. ANALYSIS

### A. Standard of Review

Mandamus is an exceptional remedy granted not by right, but only according to the sound discretion of the Court petitioned.[32] The Superior Court may issue a writ of mandamus "to command a lower court, agency, or public official to perform a duty 'to which the petitioner has established a clear legal right.'"[33] The Court shall not do so, however, unless "the petitioner can establish that there is no other adequate remedy available."[34] The Court may deny a writ if its issuance would be inequitable

---

[29] D.I. 16.

[30] Superior Court Civil Rule 12(b) provides that "[i]f, on a motion asserting the defense numbered (6) for failure of the pleadings to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

[31] *See* D.I. 17.

[32] *Brittingham v. Town of Georgetown*, 113 A.3d 519, 524 (Del. 2015) (citing *Guy v. Greenhouse*, 637 A.2d 827, 1993 WL 557938, at *1 (Del. Dec. 30, 1993) (ORDER); *Ingersoll v. Rollins Broadcasting of Delaware, Inc.*, 272 A.2d 336, 338 (Del. 1970)).

[33] *Id.* (quoting *Clough v. State*, 686 A.2d 158, 159 (Del. 1996)).

[34] *Id.* (quoting *Clough*, 686 A.2d at 159).

or if the act it would compel would be futile.[35] In the context of the law enforcement disciplinary process, the Court will deny a writ if the alleged violation of an officer's statutory due process rights is a mere technical one not resulting in prejudice to the officer's substantive rights.[36]

The Declaratory Judgment Act gives Delaware courts discretion to either render a declaratory judgment or decline to do so.[37] Such a judgment "declare[s] rights, status and other legal relations whether or not further relief is or could be claimed,"[38] but "[c]ourts may refuse to render declaratory relief [when] it 'will not terminate the uncertainty or controversy giving rise to the proceeding,'"[39] when the judgment a petitioner seeks "can have no practical effect on the injury complained of,"[40] or when such a judgment would issue "merely to satisfy a party's desire for an advisory opinion[.]"[41] In short, "The 'purpose of the Declaratory Judgment Act is to enable the courts to adjudicate a controversy prior to the time when a remedy is traditionally available and, thus, to advance [the] stage at which a matter is traditionally justiciable."[42] It does not erase the requirement that the petitioner

---

[35] *Id.* at 524–25 (citing *Ingersoll*, 272 A.2d at 338; *State ex rel. Smith v. Carey*, 112 A.2d 26, 29–30 (Del. 1955)).

[36] *Smith v. Dep't of Pub. Safety of State*, 1999 WL 1225250, at *13 (Del. Super. Oct. 26, 1999), *aff'd*, 765 A.2d 953, 2000 WL 1780781 (Del. Nov. 30, 2000) (TABLE).

[37] *In re COVID-Related Restrictions on Religious Servs.* (*In re COVID I*), 302 A.3d 464, 493 (Del Super. 2023) (citing 10 *Del. C.* § 6506; *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2737409, at *12–13 (Del. Ch. July 14, 2008)), *aff'd*, 326 A.3d 626, 643–44 (Del. 2024) (en banc) (*In re COVID II*).

[38] 10 *Del. C.* § 6501.

[39] *In re COVID I*, 302 A.3d at 493 (quoting 10 *Del. C.* § 6506).

[40] *Id.* (citing *Intermec IP Corp. v. TransCore LP*, 2021 WL 4841131, at *2 (Del. Super. Oct. 18, 2021)).

[41] *Id.* (collecting cases).

[42] *Reylek v. Albence* (*Reylek III*), 2023 WL 4633411, at *6 (Del. Super. July 19, 2023) (quoting *Diebold Computer Leasing, Inc. v. Com. Credit Corp.*, 267 A.2d 586, 591–92 (Del. 1970)). Four written *Reylek* opinions were issued by this Court in 2022 and 2023; chronologically, *Reylek III* was published third.

present an "actual controversy" to the Court.[43]

### B. Plaintiffs seek a remedy not available through mandamus because writs of mandamus may not prohibit future action.

Plaintiffs style their Complaint as a petition for writ of mandamus. "In deciding whether the Superior Court has subject matter jurisdiction, however, [the Court] must look beyond the language in the complaint to determine the true nature of [the Plaintiffs'] claim and the desired relief."[44] In short, Plaintiffs ask this Court to restrain DSP from terminating their employment. A writ of mandamus is not intended to afford such relief. Rather, a writ of mandamus "command[s] a lower court, agency, or public official to perform a duty 'to which the petitioner has established a clear legal right.'"[45]

As should be clear from this description, mandamus is a means to compel action; "[t]he writ is not for restraining or preventing action."[46] An order restricting action is, in substance, an injunction.[47] Injunctive relief is an equitable power that

---

[43] *See XL Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1216 (a court "may not exercise [its] discretion" to entertain a declaratory judgment action "unless the action presents an 'actual controversy.'") (citing *Gannett Co., Inc. v. Bd. of Managers of the Delaware Crim. Just. Info. Sys.*, 840 A.2d 1232, 1237 (Del. 2003)).

[44] *Nelson v. Russo*, 844 A.2d 301, 302–03 (Del. 2004) (citing *Diebold*, 267 A.2d at 588).

[45] *Brittingham*, 113 A.3d at 524 (quoting *Clough*, 686 A.2d at 159). The Court further notes that Plaintiff's Complaint explicitly seeks a writ of mandamus to "void the disciplinary findings" against them. Compl. 12. In *Brittingham*, the Supreme Court adopted the majority view among state courts that "mandamus is not the proper remedy to compel the undoing of acts already done or the correction of errors or wrongs already perpetrated." 113 A.3d at 529, 530.

[46] *Moore v. Stango*, 1992 WL 114062, at *4 (Del. Super. May 8, 1992) (citing *State ex rel. Lyons v. McDowell*, 57 A.2d 94, 98 (Del. Super. 1947) ("The petition seeks to restrain or prevent the respondents from doing something. Many authorities hold, and we agree with their position, that the remedy by mandamus should not be used to prevent the commission of an [a]ct.")); *see also Reylek v. Albence* (*Reylek II*), 2023 WL 142522, at *3 (Del. Super. Jan. 10, 2023); *Delawareans for Educ. Opportunity v. Carney*, 2018 WL 4849935, at *7 (Del. Ch. Oct. 5, 2018); *Woo v. Robinson*, 484 A.2d 950, 954 (Del. 1984) (Moore, J., sitting alone) ("[The Supreme] Court may not issue a writ of mandamus to *prevent* a public official from taking action; rather a writ of mandamus is appropriate only to *compel* that authority to take certain action required by law.").

[47] *Carney*, 2018 WL 4849935, at *7.

the Delaware Constitution does not grant this Court.[48]  "[A]s this Court has frequently observed, the Superior Court is 'a court of law—not equity.'"[49] Accordingly, this Court lacks jurisdiction to order the relief Plaintiffs seek.

### C. The Court will dismiss Plaintiffs' request for declaratory judgment in the interest of judicial economy.

Plaintiffs also seek a declaratory judgment that DSP violated various provisions of Title 11, Chapter 92, of the Delaware Code—now titled "Police Officers' Due Process, Accountability, and Transparency," and previously the "Law Enforcement Officers' Bill of Rights," or "LEOBOR."  DSP's motion to dismiss does not explicitly address this request.  Nonetheless, the Court concludes that Plaintiffs' request for declaratory judgment may be nonjusticiable and, even if justiciable, does not serve judicial economy. Thus, the Court will exercise its discretion not to consider Plaintiffs' request for a declaratory judgment on its merits.

As a preliminary matter, it may be that a declaratory judgment is not available because Title 11, Chapter 92, provides an administrative process by which officers may assert their rights under that statute.[50]  The Declaratory Judgment Act "provides a method for resolving a dispute where no other remedy exists," i.e., when no process for resolving the question is available.[51]  If an administrative process for determining a plaintiff's rights exists and no statute provides for appeal to this Court, a declaratory judgment action does not provide a back door through which to bring such an appeal.[52]  It is well established that Chapter 92 provides for no appeal to this

---

[48] *Reylek II*, 2023 WL 142522, at *3–4; *State v. Washington*, 2023 WL 7140800, at *3 (Del. Super. Oct. 30, 2023).

[49] *Pike Creek Recreational Servs., LLC v. New Castle Cnty.*, 238 A.3d 208, 212 (Del. Super. 2020) (quoting *Trustwave Holdings, Inc. v. Beazely Ins. Co., Inc.*, 2019 WL 4785866, at *6 (Del. Super. Sept. 30, 2019)), *aff'd*, 259 A.3d 724, 2021 WL 3437984 (Del. Aug. 5, 2021) (ORDER).

[50] *See Mock v. Div. of State Police, Dep't of Safety and Homeland Sec.*, 2022 WL 1744439, at *19 & n.166 (Del. Ch. May 31, 2022) (raising this possibility).

[51] *Brooks v. Lynch*, 150 A.3d 274, 2016 WL 5957674, at *2 (Del. Oct. 13, 2016) (ORDER).

[52] *See id.* (declaratory judgment was unavailable because inmate's controversy had already been

Court.[53]  However, the administrative process it sets forth is not *per se* intended to determine whether officers' statutory rights have been violated, but rather to assess the appropriate level of discipline for alleged misconduct.  Ultimately, the Court need not determine whether declaratory relief is universally unavailable in Chapter 92 cases.  Similarly, for the purposes of this opinion, the Court will assume, without deciding, that mandamus may be used to reinstate a terminated officer,[54] even though this Court has observed that such relief is available only in *dicta*[55] and ordered such relief only by stipulation of the parties.[56]

Although the issue was not raised by DSP, the Court may not consider declaratory judgment actions unless it first determines that the action presents an "actual controversy."[57]  "Standing is a threshold question that must be answered by a court affirmatively to ensure that the litigation before the tribunal is a 'case or controversy' that is appropriate for the exercise of the court's judicial powers.'"[58]  A plaintiff lacks standing to bring an action if the relief sought cannot redress the

heard through the Department of Correction's grievance process, which was not appealable); *Mason v. Bd. of Pension Trs.*, 468 A.2d 298, 299–300 (Del. Super. 1983), *aff'd*, 473 A.2d 1258 (Del. 1983) (per curiam) (plaintiffs could not seek declaratory judgment on their pension claim, for which there was no right of appeal, because "the controversy ha[d] been heard in the manner authorized by statute.").

[53] *Griffin v. Police Officer Standards and Training Comm'n*, 2025 WL 353580, at *6 (Del. Super. Jan. 31, 2025) (noting that "Title 11, Chapter 92 of the Delaware Code . . . does not contain any provision for appellate process." (citing *Mock*, 2022 WL 1744439, at *4; *Haden v. Bethany Beach Police Dep't*, 2014 WL 296408, at *2 (Del. Super. June 30, 2014) ("neither LEOBOR nor the Administrative Procedures Act . . . renders appellate rights to law enforcement officers[.]"); *Smith*, 1999 WL 1225250, at *11).

[54] *See Mock*, 2022 WL 174439, at *7–11 (denying equity jurisdiction to terminated police officer because reinstatement through mandamus provided adequate remedy at law).

[55] *See Smith*, 1999 WL 1225250, at *12; *Hiller v. City of Rehoboth Beach*, 2020 WL 5637053, at *4 (Del. Super. Sept. 18, 2020).

[56] *Town of Cheswold v. Rosario*, 945 A.2d 1168, 2008 WL 853541, at *1 & n.5 (Del. Apr. 1, 2008); *see also Brittingham*, 113 A.3d at 528 n.49 (emphasizing that the Court's affirmance in *Rosario* did not reach the propriety of reinstatement through mandamus).

[57] *XL Specialty Ins. Co.*, 93 A.3d at 1216 (quoting *Gannett Co.*, 840 A.2d at 1237).

[58] *In re COVID II*, 326 A.3d at 644 (quoting *Dover Hist. Soc'y v. City of Dover Plan. Comm'n*, 838 A.2d 1103, 1110 (Del. 2003)).

plaintiff's injury or grievance.[59]  "The plaintiff must show that it is likely, not just speculative, that the requested relief will redress the injury."[60]  Even if a plaintiff technically has standing and this Court has jurisdiction, the Court may decline to exercise its jurisdiction in the interest of judicial economy and to avoid rendering an advisory opinion.[61]

At this stage, it is not clear that the dispute between the parties will develop to the point that a remedy would traditionally be available.  Through this order, the Court has dismissed Plaintiffs' only request for substantive relief.  It is unknown at this point whether DSP will terminate Plaintiffs.  If so, that decision is not directly appealable to this Court.[62]  If Plaintiffs are terminated but not decertified by the Police Officer Standards and Training Commission,[63] they may well secure other employment in law enforcement rather than pursuing a second writ of mandamus to gain reinstatement with DSP.[64]

Further, a future writ of mandamus is not justified merely by a finding that DSP violated the statute.  It is well-established that a violation of Title 11, Chapter

---

[59] *Id.* at 645 (citing *Albence v. Higgin*, 295 A.3d 1065, 1085 (Del. 2022) (en banc)).

[60] *Id.* (quoting *Emps. Ins. Co. of Wausau v. First State Orthopaedics, P.A.*, 312 A.3d 597, 613 (Del. 2024) (en banc)).

[61] *See XL Specialty Ins. Co.*, 93 A.3d at 1216 ("It is well settled that a trial court has discretion in determining whether to entertain a declaratory judgment action."); *Band's Visit Nat'l Tour LLC v. Hartford Fire Ins. Co.*, 307 A.3d 387, 422 (Del. Super. 2023) (noting that the Court will decline jurisdiction over declaratory judgment actions "where a proposed declaration would not advance the litigation, but rather, would waste judicial resources." (quoting *Intermec IP Corp.*, 2021 WL 3620435, at *25)).

[62] *See* Note 53, *supra*.

[63] An officer who is decertified cannot be employed by a Delaware police agency because such employment would disqualify the employing agency from state funds, and because persons lacking certification "have no authority to enforce the laws of the State."  11 *Del. C.* § 8410. Decertification does not automatically result from termination for cause, however.  Delaware law provides for a separate administrative process before decertification, and any decertification decision may be appealed to this Court.  11 *Del. C.* § 8404A.

[64] *See Brittingham*, 113 A.3d at 527–29 (finding request for mandamus ordering new investigation, reinstatement, and restoration of rank was moot because plaintiffs had left the police department).

92, does not automatically entitle a plaintiff to a writ of mandamus. More than a quarter century ago, this Court (affirmed by the Supreme Court) exercised its discretion not to consider a mandamus claim because the violations alleged were "technical in nature" and did not "rise to the level of procedural or substantive due process violations."[65] The Court reasoned that the plaintiff's complaint "[did] not include allegations sufficiently egregious or compelling to warrant the Court interjecting in the routine disciplinary proceedings of a state agency."[66] In *Brittingham v. Town of Georgetown*, the Supreme Court reaffirmed that technical statutory violations not causing prejudice cannot entitle officers to relief[67] and emphasized that this Court may deny mandamus relief if it would be inequitable to grant it.[68] Thus, a decision by this Court that DSP had violated the statute would not necessarily facilitate any future mandamus action. A future court would still need to engage in the fact-laden tasks of evaluating the prejudice, if any, resulting from such alleged violations, and of balancing the equities of granting mandamus relief. Therefore, no efficiency would be created by a declaratory judgment in the instant action.

Unless and until Plaintiffs bring a viable cause of action in this or some other court, there is a very real possibility that any opinion this Court rendered would be an advisory one with no practical effect. Both out of deference to any future court in which such an action may be brought, and to avoid wasting judicial resources, the Court declines to address Plaintiffs' request for a declaratory judgment.

---

[65] *Smith*, 1999 WL 1225250, at *13.
[66] *Id.*
[67] 113 A.3d at 530 ("[T]he technical and nonprejudicial nature of the LEOBOR violation at issue here did not rise to the level of a due process violation. Accordingly, the relief Appellants request is not within the scope of mandamus.").
[68] *Id.* at 524.

## III.    CONCLUSION

For the foregoing reasons, DSP's motion to dismiss is **GRANTED.**

**IT IS SO ORDERED.**

_____
Noel Eason Primos, Judge

NEP/tls

*Via File & ServeXpress*

oc:     Prothonotary

cc:     Counsel of Record